### Lessee of THOMAS GRANT *against* DANIEL EDDY.

The words of the act of assembly of 1st April 1784, in the 3d section, are merely directory, and do not avoid a warrant for want of a certificate of two justices of the peace, that the lands were unimproved, or for an improper one.

A warrant describing lands particularly, but stating their situation in one county, when they lie in another, is binding on the commonwealth, after receipt of the purchase money.

Priority of application under the act of 3d April 1792, gives a certain degree of equity, but it may be forfeited by gross laches and delay.

EJECTMENT for 55,000 acres of land, on the waters of Loyalsock, Hopping, Towanda and Muncey creeks.

The plaintiff claimed under a number of different applications in the land office, dated December 17, 1792, and 8th March and 3d May 1793, for 400 acres of land each, and warrants consequent thereon, bearing equal date therewith, on which surveys were made.

Previous to the entry of the applications, the lessor of the plaintiff obtained the certificate of two justices of the peace of Northumberland county, that the lands were unimproved. The warrants described the lands as lying in the county of Northumberland or Luzerne.

The defendant claimed under a number of applications and warrants, bearing date August 13th and 28th, September 3d, November 5th and 30th, *anno* 1792, and surveys thereon made. The certificate, that the lands were unimproved, was subscribed by two justices of the peace of Luzerne county, and the warrants called for lands in that county. The ridge between the east and west branches of Susquehannah was one of the limits of the two countries ; but it appeared that the same had not been run.

The defendant's counsel began their evidence by offering to read their leading warrant, dated September 3d 1792, issued in the name of Isaac Stephens. It described "400 acres on the main branch of Big Mehoppeny creek, beginning about 18 miles from the mouth of the said creek, where it forks on the south branch, ( near which stands a birch tree marked with a blaze,) which empties into the west side of the north east branch of Susquehannah, and adjoining lands that day granted to Christopher Marshall, situate in Luzerne county."

This was objected to by the plaintiff's counsel, who contended that under the act of 1st April 1784, (2 Dall. St. Laws, 202, § 3, every applicant was bound to produce a certificate from two justices of the peace of the proper county, that the lands were unimproved. This then is an essential pre-requisite to vest a title under the commonwealth, and the certificate whereon the defendant grounds his right, might with equal propriety be given by two justices of Allegheny or other remote county. Besides a warrant to appropriate lands in Luzerne county, will not authorize a survey of lands in Northumberland county, and the defendant under such warrants cannot hold lands in the latter county.

The defendants's counsel insisted that the warrants were clearly good against the commonwealth, after they had received their purchase money ; and third persons has nothing to do with the certificate. If the deputy surveyor has misbehaved himself, (which is denied,) let him be punished. There are no negative words in the law in question, which declare that warrants issued otherwise than the law prescribes, shall be void. No injury can be done to the state, because the section relied on directs, that the person applying shall produce to the secretary

of the land office a particular description of the lands.   The statute of 13 Eliz. cap. 10, says, that all leases made by any persons therein mentioned, contrary to the tenor of that act, shall be utterly void and of none effect to all intents, constructions and purposes: yet it has been adjudged, that a lease made by a dean and chapter against the said statute, shall not be avoided, during the life and continuance of the dean that made the lease.   3 Bac. Abr. 391.   1 Bl. Com. 87.   So where certain statutes have directed warrants to issue upon oath, and they have issued without oath, still they have been held good.   So a mortgage, though not recorded within six months, has been resolved to be good against the mortgagor.   Dall. 430.   And several other cases of the same kind are put by the Chief Justice, in delivering the opinion of the court.   Ib. 435.

By the court.   The objection appears to us to be ill grounded ; but if sustained it would operate as a two edged sword.   For if the insertion of a county in the warrant, variant from that wherein the justices live, would vacate such warrant as to the lands out of the proper county, then the title to the lands in Luzerne county, surveyed under the plaintiff's warrants, would be bad.   But such informalities cannot, in our idea, defeat a right.

The words of the act of 1st April 1784 are merely directory, and do not avoid a warrant for want of a certificate, or for an improper one.   The object of the legislature was to prevent persons from obtaining a title to lands which had been before occupied and improved, without paying interest on the purchase money during such occupation. Here that design was fully answered.   The certificates both of the plaintiff and defendant, show that the lands were wholly unimproved, and no fraud could possibly be intended against the state.   The boundaries between the two counties could only be guessed at.

To the cases already cited by the defendant's counsel, another may be added.   Under the act of assembly of 4 *Annae*, it is directed, that it shall not be lawful for any sheriff or other officer to sell, or expose to sale, any lands, &c., which shall or may yield yearly rents or profits sufficient, beyond all reprizes, to pay the debt and costs within seven years; nevertheless, in the case of Duncan's lessee v. Lawrence, at Nisi Prius at Carlisle, before the revolution, May assizes 1796, it was resolved, that the want of an inquisition did not vitiate the sale, where it was evident that the debt and costs could not be satisfied within seven years, out of the annual rents and profits.   Let the warrants be read : of their operation and of the surveys made thereon, the court will give their opinion to the jury.

It appeared in the course of the evidence, that the defendant had paid into the receiver general's office 420*l*., on the 17th September 1792 ; 620*l*. on the 10th January 1793, and 2170*l*. on the 12th August 1793, besides the usual office fees. But the proof on the part of the plaintiff was extremely defective in this particular. The certificate of the receiver general charged the " lands Dr. to cash," and there was only one entry of cash credited, as applicable to the subjects in dispute, viz. 94*l*. 10*s*, 6*d*. on the 26th January 1793.

A *caveat* had been filed on the part of the plaintiff on the 26th February 1793, and a decision of the Board of Property was had on the 28th March 1794, that the deputy surveyor should execute the defendant's warrants, the same having the priority in point of time and well describing the lands. To which this remarkable passage was subjoined —" but this decision is not to influence the determination of any other cause relating to lands in dispute in that part of the country, between other parties." The present ejectment was commenced within six months thereafter.

Much stress was laid by the plaintiff on this supposed circumstance, that the waters referred to in the defendant's warrants were incorrectly denominated; and a distinction was attempted to be set up between the instances of a vague and general warrant being ascertained by a marked tree or other distinguished object, and waters improperly described being ascertained by such object. In the former case, it was said the dubious general words were restrained and confined by the specified particulars ; but not so of the latter, because of the manifest contradiction therein.

On the part of the defendant, it was insisted, that the lands in controversy were described in his warrants with accuracy and precision, and the different streams of water denominated with correctness.

The court in their charge to the jury observed, that it would be highly unreasonable to expect the same precision and correctness in the descriptive parts of warrants, to take up lands in a tract of territory newly explored, as where the adjacent country had been fully settled and long known. This remark holds with peculiar force, in the description of waters flowing through a considerable extent of ground, where parts of the stream may properly be deemed main branches, in reference to other parts in the newly discovered lands, but which, on taking the whole river or creek into view, could not thus be denominated with propriety.

It has long been considered sufficient, if the warrant is so couched as to point out the lands contemplated with certainty to a common intent. Where an object, visibly marked, is referred to, it reduces general and indescriptive expressions to a fixed certainty.

The warrant lately granted by the land office bear equal date with the application of the different parties; but the periods when they have actually issued, can only be ascertained from the payment of the purchase money. In this mode, the time of issuing the defendant's warrants may be ascertained.; but from the deficiency of the proof adduced by the plaintiff, it cannot be pronounced with certainty when his warrant issued.

We know however, that the applications for the defendant are earlier than those of the plaintiff, and that the former must succeed, provided the lands are described with convenient certainty, and the party has not incurred a forfeiture of his pretensions, by gross laches or delay.

Priority of application gives a certain degree of equity. Vide law passed 22d April 1794. 3 Dall. St. Laws, 581. The deputy surveyors, by the 5th section of the act of 3d April 1792, are directed to survey according to the priorities of the warrants. 3 Dall. St. Laws. 210. But all applications must be pursued within a reasonable time, by payment of the purchase money and taking out warrants, and procuring surveys to be made. It would under, a different construction, lay in the power of the earliest applier to engross and monopolize the whole country, by a long list of applications contiguous to each other, begining at a certain fixed point, without paying a single shilling into the coffers of the state, until it suited his convenience! This never could have been the intention of the legislature.

What that reasonable time is, appears unnecessary to be determined in the present suit, because it cannot come in question, unless it clearly appears that the lessor of the plaintiff has paid his money into the treasury sooner than the adverse party, and that the latter has been guilty of manifest negligence.

As to the defendant's warrants calling for lands in Luzerne county, the objection seems to have little weight. The words must be considered as a matter of description. The lines of these two contiguous counties were not run. The lessor of the plaintiff knew not in which of the counties the land would lie, and therefore designates them in his warrants in the one county, or the other. An individual conveying four hundred acres of land, for an adequate consideration, to another, by the description used in the warrant granted in the name of Isaac Stephens, and placing its situation in the county of Luzerne, if it should after-

wards appear from the fork of the main branch of Big Mehoppenny creek, the blazed birch tree, and the adjoining lands of Christopher Marshall, that the tract intended to be purchased was situate in the county of Northumberland; (vide 1 Ld. Raymond, 728,) it will not be seriously doubted, that the vendor should be bound thereby, and that he is not at liberty to grant the same tract to another. Why, from parity of reason, should not the commonwealth be bound by the act of their proper officers?

The jury must judge for themselves, on a full consideration of the defendant's warrants, whether they are not sufficiently descriptive to cover the lands in question. The caveat filed by the lessor of the plaintiff on the 16th February 1793, furnished some ground for the delay of payment of the residue of the purchase money by the defendant, until the month of August following.

Verdict for the defendant.

Messrs. Duncan, W. Tilghman, D. Smith and Cooper, *pro quer.*

Messrs. Ingersoll, E. Tilghman, Thomas, Clymer, C. Smith and Hall, *pro def.*