## Oliphant *against* Ferren.

Copies of entries in the books of the land office, duly certified by the secretary, are competent evidence to prove the real owner of a warrant.

ERROR to *Fayette* county.

This was an action of ejectment by *John Oliphant* against *William Ferren*, to recover four hundred and six and a half acres of land. The plaintiff, after he had given in evidence a warrant of the 5th April 1792 to *David Dunbar*, and a survey thereon, offered in evidence the following paper, signed by the secretary of the land office, and certified under the seal of the office.

" 1792, April 21. ———— 9319.

" J. Nicholson, Esq. 7 warrants, amount 2600 acres, at 50s. per acre, £65.

" By sundry balances and interest on two tracts of land of 400 acres each, granted by warrant dated 7th September 1789, to Clement Bidwell and George Truder, said land found not vacant, £92. 7s. Certificate delivered to Mr Bidwell for J. N., May 2, 1799, fees 70s. um. pd.

H

[Oliphant v. Ferren.]

" In testimony that the above is a true copy of an entry in a book marked No. 4, old purchase blotter from the 1st of February 1792 to 31st December 1793, remaining in the office of the secretary of the land office, I have hereunto set my hand, and caused the seal of said office to be affixed this 21st day of May 1830."

Several other papers of the same character were offered at the same time, all of which were objected to by the defendant and rejected by the court; which was the subject of the only bill of exceptions argued here.

The opinion of the Court was delivered by

HUSTON, J.—The only error assigned is contained in a bill of exceptions to testimony. That testimony was certain certificates from the office of the secretary of the land office. To understand the evidence we must recur to certain acts of assembly. The act of 29th March 1792 recites in the preamble, that sundry persons, since 1st July 1784, had purchased warrants for lands and paid for them, and for reasons there specified could not procure the land or some part of it; and section one provides, that in such case the owner of the warrant shall apply to the deputy surveyor of the district in which the lands lie, who shall certify to the surveyor-general whether any, and how much of the land described in said warrant can not be surveyed, for the reason aforesaid, or being surveyed, interferes with prior rights, &c.; and the surveyor-general shall certify to the receiver-general how much of said warrant shall remain unsatisfied.

Section 2. Whenever it shall, by the original receipts or other legal voucher, *or by the entries made in his books*, appear to the receiver-general that any person or persons have paid into the land office any money or certificate, for lands granted to them by warrants issued after the 1st of April 1784, and which they have not obtained, or that they have paid any money over and above what was due to the commonwealth for the lands obtained by virtue of said warrants, he shall carry the said money or balance to the credit of such person or persons, his heirs, &c. in payments already due or hereafter to become due to the commonwealth for the purchase of any land within the same, &c.

This act was to expire on the 1st of January 1795. *John Keble* was chief clerk in the office of the receiver-general from the 1st of April 1784 till after 1795. This man kept a series of blotters, or books of original entries of all moneys paid into the receiver-general's office, which are numbered 1, 2, 3, 4, &c. in which the time of payment, and the person who paid, or obtained any credit in that office, and the purpose to which the money paid or the credit was applied, are all entered. In the warrant book generally, the warrant is charged to the warrantee or person in whose name any warrant issued, but in the blotter is found the name of the person or company who actually paid into the office the sums of money on which any

[Oliphant.v. Ferren.]

warrant or list of warrants was obtained. Somehow it happened that these blotters were not considered office books, and copies from them, under seal, were not considered evidence. On the 21st of March 1823 an act of assembly was passed, enacting, that "all copies of records, documents and papers in the offices of the secretary of the commonwealth, secretary of the land office, surveyor-general, auditor-general and state-treasurer, when duly certified by the officers of said offices respectively, shall be received in evidence in the several courts of this commonwealth, in all cases where the original records, documents and papers would be admitted in evidence; provided, however, that in any judicial controversy, before any court of this commonwealth, either party have the original record or document produced on the service of proper process for that purpose."

It must be recollected that the office of receiver-general had been abolished, and all papers, records, &c. of that office, by law, were transferred to the secretary of the land office. Before this act, the possession of the original receipt for the purchase-money, or the testimony of *J. Keble* in his lifetime, or proof of his hand writing and entry in these books, was evidence. This act, it is notorious, had an especial reference to these books, and since its enactment such copies are evidence; not conclusive, but an evidence of who paid the money on any warrant or list of warrants. Most of the warrants which issued from 1784 till 22d September 1794, issued in the names of persons who had no interest in them, and often in fictitious names. The real owner procured conveyances from the warrantee when he was going to patent or sell; but many have never been sold or patented, and many owners of warrants and land became insolvent or are dead. Attempts to prove ownership of warrants surveyed and returned, but not claimed by any person, have occurred in cases fair and honest, and in cases not of that description; proof of who actually paid for a warrant, is among the most unequivocal evidence of ownership, though not always conclusive. The dates appear wrong, but are easily understood when we know the practice of the land office. The last part of the document, and the last of the applications for warrants is dated 5th of April, and filed on that day in the office of the secretary of the land office. Although it gave no right until the purchase-money was paid to the receiver-general, yet the practice was (I don't say it was a good one) to give the warrant when it issued the date of the application, although it actually issued some weeks or months after the date of the application, and the title to the land has turned on the proof of this fact. The paper offered was evidence.

Judgment reversed, and *venire de novo* awarded.