## M'Namara *against* Shorb et al.

A deposition having detailed the acts done by a settler in the course of making an improvement on land, concluded with the expression, that the improvement was continued and kept up to a certain period : Held, that this latter expression was not exceptionable, and was rightly read to the jury.

When a warrant is granted for land upon which an actual, personal resident settlement was made and continued, which calls for a certain number of acres with the improvements upon it, as lying in the county where all the improvements are, and still further describing the land as adjoining lands in the same county and lands in the adjoining county, and such warrant is directed to the deputy surveyor of the county in which the improvements are, and a survey is made thereon by him, embracing lands in both counties : it is a good and effectual survey and appropriation of the land.

ERROR to the county of *Centre.*

This was an action of ejectment by Shorb, Lyon and others against Thomas M'Namara, for a tract of land in Centre county. Upon the trial of the cause, the plaintiff offered in evidence the deposition of a witness, who detailed acts done upon the land in dispute, by a settler in the course of his making his improvement, and concluded with the expression, that the improvement was continued and kept up to a certain period. This latter part of the deposition was objected to on the ground that it was the expression of the opinion of the witness, as to what an improvement was, and what was such a continuance of it as was necessary to entitle the settler to a warrant. The objection was overruled, and exception taken by the defendant.

The plaintiff's title was founded upon a settlement and improvement made within the county of Huntingdon, and a warrant which called for lands in the county of Huntingdon, and other lands in the county of Centre ; and a survey on that warrant made by the deputy surveyor of Huntingdon county, which included the land in dispute, which was in the county of Centre : and the question which arose was, whether the survey was not void as to that part of the land which was in Centre county. The opinion of the court (Burnside, president) was, that the survey was not void as to any part of the land, but gave good title to the plaintiff. The admission of the evidence and this opinion were the only errors assigned which gave rise to the decision of any principle.

*Valentine* and *Blanchard,* for plaintiff in error.
*Potter,* for defendant in error.

The opinion of the Court was delivered by
KENNEDY, J.—The bills of exception to the opinion of the court

[M'Namara v. Shorb et al.]

below, on the admission of evidence, compose the first four errors assigned. The first, however, is the only one of them which was pressed upon the argument of the cause; the others were given up: I shall, therefore, notice the first, which was an objection to the reading in evidence that part of George Anshutz's deposition, inclosed in brackets towards the close of it, in which he speaks of the improvement being kept up and continued upon the land in dispute. This was objected to on the ground that it was merely the opinion of the witness; that instead of giving his opinion he ought to have stated the facts upon which his opinion was founded; that the jury, under a proper direction from the court on the subject, as to the law of improvement, might have formed an opinion for themselves, whether the improvement of the land had been continued and kept up or not, as stated by the witness. This objection, in the abstract, would no doubt be good; but in this case the witness, in the preceding part of his deposition, had detailed the acts of improvement done on the land, to which he must be understood as having a reference when he uses the term "improvement" in the part objected to, and states that the *improvement* was continued and kept up to a certain period. I therefore think there was no error in admitting this evidence.

The remaining errors assigned are, to the charge of the court to the jury; and to the answers of the same, to points submitted by both parties, requiring a direction thereon to be given to the jury.

It is considered unnecessary to discuss and decide upon all the remaining errors assigned in detail. For if the court below was right in charging the jury, as they did, that it was no objection to the settlement under which the plaintiffs below claimed the land in dispute, that the dwellinghouse, improvements and cleared land belonging to the settlement, were all in Huntingdon county—That there was nothing in our land laws or acts of assembly on the subject which forbade Keith, under whom the plaintiffs below claimed, from settling upon unappropriated land lying upon the dividing line of the two adjoining counties, making all his improvements necessary to constitute and complete a legal settlement, agreeably to the acts of assembly of 1786 and September 22d 1794, in one of the counties, and locating his four hundred acres, to which he became entitled by virtue of his settlement, or any less quantity that he pleased, partly in both counties, provided it consisted of one continuous and entire tract—And that the warrant founded upon such settlement, and taken out for the land intended to be claimed under it, was good, notwithstanding the land is described in it as lying in Huntingdon county, where the improvements were made—And if it be that the court below, in addition to the above, ought further to have charged the jury, that the survey made by John Morrison, the deputy surveyor of Huntingdon county, in 1813, a fact which seems not to have been disputed, embracing the settlement, improvements and land lying in both counties, of which the land in dispute is a

part lying in Centre county, was good and available in law, instead of telling them that it was void : It will dispose of this whole case, and sustain the verdict of the jury for the plaintiffs below, and the judgment of the court upon it, whether the court were correct or not in their direction to the jury on the other matters; and will render the consideration of them altogether unnecessary, for they were pressed into the argument of the case in order to supply the want of an official survey including the land in dispute.

A settlement, such as was required by the act of 1794 to be made upon the land in this case to entitle the party to obtain a warrant from the land office for it, was correctly and accurately defined by the president judge of the court, to the jury : and the manner in which it was necessary to continue to keep up and maintain the settlement until after the warrant was purchased and obtained, was also correctly laid down and explained to them : and he then left it very properly to the jury as matters of fact to be decided by them, whether all those things necessary, in the first place, to constitute a legal settlement, and in the next place, for the regular continuance of it, had been done and fully performed. So that the fact of such settlement having been made as fairly and legally entitled Keith to the warrant, was conclusively settled in his favour by the verdict of the jury. Keith, then, having complied with the act of 22d of September 1794 requiring a settlement to be made by him upon the land before he could obtain a warrant, on the 23d of July 1812 purchased one of the state, calling for his improvement, and describing the land as lying in Huntingdon county, and likewise as adjoining, in part, the lands of certain persons therein named, which lay in Centre county, and to which his warrant could not be extended without embracing the land in dispute ; and on the 26th of August, in the year following, had a survey made by John Morrison, the then deputy surveyor of Huntingdon county, to whom, as such, the warrant was directed, including his settlement with all his improvements which lay in Huntingdon county, and extending the survey across the boundary of Huntingdon county into Centre, and thus embraced the land in dispute. The deputy surveyor made but the one survey, which included land lying on each side of the dividing line of both counties.

By the existing laws of the state in 1811, when the settlement under which the plaintiffs below claimed was made, a settler upon land became entitled, if he made his settlement upon unappropriated land, to a warrant for four hundred acres, including his settlement and the land around it, if there were so much of it, and if not, to whatever less quantity there might be, upon his paying to the state the purchase money; and at that time, and for some years afterwards, a person could not obtain a warrant for land without having made a settlement upon it previously, and having continued and kept it up to the time, at least, of getting his warrant.

There never was any law restricting a person in his undertaking

[M'Namara v. Shorb et al.]

to appropriate land by settlement as long as that mode has been effectual in the state, to his taking the entire tract or quantity of four hundred acres in the same county, notwithstanding he might want but the one tract.    He was always at liberty to select four hundred acres in one entire tract, and to secure it by a settlement, although its locality might have been such as to have extended into two or more adjoining counties.    And, indeed, I think it would not have been for the interest of the state, at so late a period as 1811, to have had it regulated otherwise, after having permitted, in all prior time, men to cull, select and lay out in any figure or form almost they pleased, their grants of land from the state; and hence many small fragments were left, sometimes lying in two adjoining counties on both sides of the dividing line, such as no one would have thought worth taking up, unless the whole, not exceeding four hundred acres, could have been secured by one settlement.    The settler was then to have his title perfected, first, by paying the purchase money to the state and obtaining a warrant from the land office, where they had authority alike all over the state to issue warrants for lands upon which legal settlements were made and kept up, without regard to a division of the state into counties, or to the land lying altogether in one county, or partially in two adjoining counties; and next, upon a survey thereof being made and returned into the land office, by obtaining a patent therefrom, and paying the necessary fees, which completed his title.    A settlement gave most clearly a right, then, to have a warrant for four hundred acres, upon paying the purchase money due to the state; and it is equally clear, that under the provisions of the act of September 1794, but one warrant could be granted upon the same settlement, because the language of the act is, " no application (meaning for a warrant) shall be received at the land office, for any lands within this commonwealth, except for such lands whereon a settlement has been, or hereafter shall be made, grained, raised, and a person or persons residing thereon, no matter how small the quantity might be. Hence it is manifest that no warrant could issue after the passing of that act, as long as it was continued in force, for land, however small the quantity, without a previous settlement being made and kept up on it.    It would, then, be not only singularly strange, but absurd, to say that the party is legally entitled to, and has obtained a warrant from the state for four hundred acres or any less quantity of land, but cannot have a survey made of it because it lies in two adjoining counties, when, without a survey, he cannot possibly have his title perfected.    It is contended, that as the land lies in two adjoining counties, a survey cannot be made of it, because the survey, if made to include the land lying in both counties, must be one entire survey, made by the same deputy surveyor; and that no deputy has any authority to make a survey of land, only part of which lies in the county for which he has been appointed, and if he does so it is absolutely void, at least so far as it lies without his pro-

per county. In support of this reasoning the following acts of assembly have been cited. The act of the 9th of April 1781, sec. 3, *Purd. Dig.* 511, 1 *Smith* 529, which authorises "the surveyor-general to appoint a deputy or deputies in any county of this state, who shall have power to make and return into the land office surveys of land *only* in the county for which such deputy or deputies shall be appointed:" next, the act of the 8th of April 1785, sec. 15, *Purd. Dig.* 524, 2 *Smith* 317, which declares that "in making any survey, by any deputy surveyor, he shall *not go out of his proper district* to perform the same, and *every survey* made by any deputy surveyor, *without* his proper district, shall *be void,* and of *none effect:*" and last, the act of the 3d of April 1792, sec. 6, which is in the same words with the clause just recited from the act of 1785. *Purd. Dig.* 529, 3 *Smith* 70. The act of 1781, on this subject, may be considered directory to a certain extent: it does not declare that a survey made by the deputy surveyor of a county, including land lying without the county for which he has been appointed, shall be void; and although a survey of a tract of land lying wholly without his proper county might be considered void for want of authority, and as being repugnant to the spirit as well as the letter of the act, yet it does not follow, I apprehend, that because a small part of it may be without, that the survey is void even as to that part. The passages referred to in the acts of 1785 and 1792 relate more particularly, if not altogether, to the surveying of lands within the purchase by the state of the Indians in 1784, and the lands lying north and west of the rivers Ohio and Alleghany. Wright. *v.* Wells, 1 *Yeates* 286; Harris *v.* Monks, 2 *Serg. & Rawle* 560. But I am not inclined to think that if they were applicable to the land in dispute, that a survey made by the deputy surveyor of his district, of a tract of land lying in part within, and in part without his district, would be void. For this, I take it, would be contrary to the spirit and meaning of the legislature. They merely intended to prohibit deputy surveyors from surveying lands lying altogether without their proper and respective districts; and I am far from being satisfied that this construction is in anywise repugnant to even the literal meaning of these acts. Because, unless the whole of the land embraced within the survey lies without his district, it cannot strictly and properly be said to be a survey made by him "without his proper district," and these are the words of the acts.

I do not wish to be understood, however, as holding, that in all cases where a deputy surveyor makes a survey of a tract of land, any part of which lies within the county of which he is the deputy surveyor, that it will therefore be good; a fraudulent evasion of the acts which are the proper directory on this subject, is not to be tolerated. But I do maintain that when a warrant is granted, as was done in this case, for land upon which an actual personal resident settlement was made and still kept in being to the granting of the warrant, which calls for a certain number of acres of land, with the

[M'Namara v. Shorb et al.]

improvements upon it, as lying in the county where all the improvements are, and still further describing the land as adjoining lands belonging to certain persons, by name, lying in the same county, and also other lands lying in the adjoining county belonging to persons therein named, and such warrant is directed to the deputy surveyor of the county in which all the improvements lie, and a survey is made thereon by him, embracing the lands in both counties, according to the calls for the adjacent owners of lands, as named in the warrant, that it is a good and effectual survey. If it were not to be considered a valid survey, then there are other cases in which, upon analogous principles, it ought not to be held so, but in some of which the propriety and reason for holding it good may, perhaps, be more glaring and apparent; and I will, therefore, mention one which might readily happen, if it never has. Suppose a warrant were to be granted to a man for land lying in a certain county, directed to the deputy surveyor of the same county; and immediately after its date, and before a survey made upon it, the county were to be divided into two counties by an act of the legislature, one of the two retaining the old name, and a new deputy surveyor is appointed for the other county. It would not be pretended, in this case, that the deputy surveyor of the county retaining the old name would have any more authority to make a survey of a tract of land lying altogether in the new county, than if it never had been any part of the county of which he is the deputy surveyor; because the moment that the county is curtailed and limited in the extent of its territory, his authority to make surveys becomes equally so; he is confined to the boundaries of the county for the time being, and has no right to pass beyond them. But can it be, that the legislature ever intended that the warrant, in this supposed case, should not be executed by the deputy of the county to whom it was at first directed, in the same manner as if the county had remained undivided? I feel perfectly satisfied they never did. Indeed it may be that such case, as well as others of similar character, never entered into their minds: but hence the necessity of giving to the acts of the legislature such reasonable construction as will best meet the exigency of such cases as they shall happen to arise; and at the same time to pursue the course which it is most reasonable to believe the law makers would have prescribed, had they undertaken to have provided expressly for the case.

Mentioning the county in the warrant, in the case under consideration, may be regarded as being intended to answer a double purpose. First, as an indication of the deputy surveyor to whom the warrant was to be directed for execution; and next, as a description, in part, of the land. Grant *v.* Eddy, 2 *Yeates* 152. But it is certainly no objection to the warrant, that the land for which it was intended is not described with as much accuracy and exactness as it might have been, where no other claims are likely to arise in opposition to it. Nor is the deputy surveyor to be restrained in making the survey upon it, through want of a more full and accu-

rate description of the land upon which the warrantee wishes to have his warrant located, than what is contained in it, provided he includes the settlement, and land around not otherwise appropriated at the time of making the survey. And it could have been of no avail to have inserted Centre county, with a view of having the warrant directed jointly to the deputy surveyors of both counties, because such a thing would have been quite anomalous, and certainly without any authority, either express or implied, arising out of any act of assembly on the subject.

I have now only to observe, that the plaintiffs below, having shown, on the trial of the cause, a settlement made upon the land in question, by Keith, such as entitled him to a warrant, upon which he actually obtained one, after paying to the state the purchase money for it; and having again, in the course of fourteen months afterwards, procured an official survey, to be made, including the land in dispute, by the proper officer; since which they have, as it appears by the evidence, continued to claim the land, and to exercise acts of ownership upon it: there was certainly no pretence for calling upon the court below to instruct the jury that the plaintiffs there had, *in law*, abandoned their claim; and I think quite as little ground left to the jury, from the evidence, to find that they had done so *in fact*.

Judgment affirmed.