## Anderson *against* Keim.

In an action of ejectment involving the original title to land, certified copies of books and papers in the land office, having a relation to the subject, are competent evidence, although they may not, *per se*, establish the fact for which they are offered, but only in connection with the practice of the land office.

ERROR to the common pleas of *Somerset* county.

Espy L. Anderson against John Keim and others. This was an action of ejectment for a tract of land.

The plaintiff gave in evidence a warrant to Alexander Bingham, dated the 12th of March 1786, descriptive of the land, upon which a survey was made the 16th of May 1786, of 386 acres and allow-ance; and in order to deduce the title down to himself, he offered in evidence, " a certified copy of purchase voucher, No. 1121, together with a certified copy of the purchase blotter, No. 1121, and the original receipt of Francis Johnston, receiver-general, by John Keeble, his deputy." To which the defendants objected:—

. 1. Because the receipt on the face of it, shows it to have been mutilated and altered.

2. It does not show that James Burnside paid for the warrants, but the reverse.

3. That the purchase-money paid does not appear to have been for these or any other warrants.

, For these reasons the court rejected the evidence and sealed a bill of exceptions. Verdict and judgment for defendants.

*Hampton* and *Black*, for plaintiffs in error, cited 16 *Serg. & Rawle* 44; 6 *Serg. & Rawle* 312; 2 *Penn. Rep.* 132; 1 *Watts* 57.

*Forward*, for defendant in error.

The opinion of the court was delivered by

HUSTON, J.—In this case, some questions of evidence arose on points, which we supposed were settled by general usage, by decisions of this court, and by act of assembly.

It is too late to inquire whether the Penn family, or since their day, the state, adopted the best mode of selling their lands. And it would do no good, but be productive of much injustice, to enter into the question, whether the mode of keeping the books of the land office, was such as every individual would have adopted, or is prepared now to approve. It is, however, I believe, true, that they, when understood, contain every thing which we could reason-

[Anderson v. Keim.]

ably expect to find in them, though a person not acquainted with the mode of keeping them, might mistake on looking at one alone.

Thus, by opening only one book, we might suppose, that each person to whom a warrant was granted, paid for it in cash on the day it bears date; but by looking further, we discover that many warrants were paid for in continental certificates, which by law were receivable in payment for lands; and we learn that such certificates, or cash, to a large amount, were lodged in the land office to the credit of a person who took out thereafter at any time, or at different times, as many warrants as the sum deposited would pay for.

The mode of keeping such accounts is well exemplified by the documents in the present case:—Tickets 1121; Mr Burnside 62 warrants, 16,880 acres, 1688 pounds; Received 4 Con. Cert. 103 pounds 19 shillings, 9 Con. Cert. 287 pounds 15 shillings 9 pence, &c., &c., in all amounting to 1690 pounds 9 shillings 6 pence; one receipt given 31 pounds fees paid.

Thus in this instance the money paid exceeded by a little the warrants at that time proposed to be taken out, and for this the depositor had a credit in the land office towards any future warrant he might take, or towards patenting those already taken. The book also shows, that a receipt was given for the sum paid in. The entry and the receipt which was produced, are in the handwriting of John Keble, who was chief clerk in the office of the receiver-general of the land office, as was proved in the cause.

But I must go back—persons applying for lands often filed an application for a warrant or for several warrants, in the office of the secretary of the land office; nothing was done on these applications until the purchase-money was paid; when the warrants were made out. The warrants bore date on the days the applications were filed in the secretary's office, though not actually made for days or weeks or months after—and generally this did no harm—and could not be objected to by any other person, unless such other person applied and actually paid the state before warrants were taken out on the applications first filed. Even this would not always decide priority; for so many warrants were applied for and paid for on the same day, at some periods, that all the clerks could not fill up and enter them for several weeks. See Grant *v.* Eddy, 2 *Yeates* 148. But often the same person applied for more warrants than one, and there must be a distinct name as applicant for each several warrant; in such case the applications were generally made in the same handwriting, and on the same sheet of paper, or on several sheets of paper attached together. If the one list required all then paid in by the owner of it, the number of his item in the book of entries of payments was written on that list: if the first list of warrants did not absorb the whole sum paid in, the same number was put on the next list, &c.: thus in the present case, the whole sixty-two warrants were not applied for on the same list, hence we find 1121,

[Anderson v. Keim.]

(the number of the sum paid in) written in more than one place in the certified lists of warrants. It has been said this was an awkward mode of making the entries, and not satisfactory. We however have it as it is, and I have never met a chief clerk in the office where the books are kept who did not, after experience and the frequent recurrence to them which his duty requires, consider them as entirely satisfactory, and perfectly accurate. It is strange, but true, that the books, in which these original entries were made, called "John Keble's blotters," were not considered of such character as office books, that a copy under seal was evidence, though the other books, which, as to these, may be called the journal and ledger, were office books—for a long time these entries were proved by a clerk who attended with copies, and such was the case in Grant's Lessee *v.* Eddy, 2 *Yeates* 148, to which case I refer as authority for much of what precedes; I attended closely to that trial, and, as much of the matters which occurred in it were new to me, then a young man, I took a full note of it; experience at the office, at the bar, and in court, has made me familiar with some of these matters, and it appears strange, that papers (or since the act of 31st March 1823, office copies of papers) which from 1795, until within a few years, were admitted without dispute, before lawyers and judges of great age, experience and knowledge of our titles, have within the last ten years been often the subject of objection. We have had before us two other cases at this term, in which the copies from these same books were offered and received by the court of another district, as evidence of ownership of warrants, where no deed poll had been obtained. Oliphant *v.* Ferren, 1 *Watts* 57. But I understand the objection is not confined to such papers generally, but in this case is made to these papers for particular reasons; to the entry of money, because paid in by "*Mr Burnside*," leaving it uncertain to which gentleman of that name it applied; still it was admissible, and the particular Mr Burnside might be ascertained by other evidence, e. g., as in this case by the receipt, (which, by the book, was given) in the same handwriting as the entry in the book—or to prove this, evidence might be given as to who delivered the warrants to the deputy surveyor—who paid for surveying—who has since 1785 claimed and sold—by whom or under whom the other tracts entered on the same paper, and paid for by the same man, had been since held; for though where a single warrant is taken, it is generally in the name of the owner or one of his family, yet where many warrants are applied for in one list and paid for in one payment by one man, the presumption is, that all the warrants and lands held by them are the property of such man, and this has been considered *prima facie* evidence of his right and must prevail unless explained away or rebutted.

But another objection was made to the receipt; it stated the amount "received by the hands of Mr James Burnside," being the amount credited to the following named persons, and then followed

X.—w*

[Anderson v. Keim.]

a list of applications for warrants, in all sixty-two, in so many different names; through eight of these names a pen was drawn, and in the margin opposite was written "allowed 31st December 1794;" or in other places was written "31st December 1794." By an act of 29th March 1792, and supplement of 6th March 1793, those who had taken out and paid for warrants, and could not obtain the land called for, could, on a certificate of that fact from the deputy-surveyor of the district, obtain a credit for the sum paid on such warrant, provided application was made at the land office before the 1st day of January 1795. I do not say the face of this paper, as it now is, shows that eight of these warrants were so lost, and credit allowed for them; but its appearance is consistent with these facts. It was not wise in James Burnside to thus alter one of the evidences of his right; but it may have been done to direct those who came after him in looking for his lands. It ought, however, to have gone to the jury as evidence that the "Mr Burnside" named in the book, was the James Burnside to whom the book states a receipt was given. An erased or altered paper is not always void. See Heffelflinger *v.* Shoults, 16 *Serg. & Rawle* 44. In this case there is no alteration in the name of the warrantee in this suit, and the alterations of the others, if they had any effect, are against the owners of the receipt.

I can not suppose the court acted on another objection, viz: that the receipt purports, literally taken, to have received the money from the several warrantees: all receipts given on lists of warrants are in this way, yet, as stated before, have always been admitted as evidence of interest, in the person by whom the payment was made; if defendant in this case claims under Alexander Bingham, and can show that he furnished the money to James Burnside, to pay for his warrant, it will repel the presumption of right in Burnside.

The evidence ought to have been received, and the plaintiff permitted to deduce title from Burnside, if he could.

Judgment reversed, and a *venire de novo* awarded.