# Prout *against* Bard.

Under the 15th section of the act of April 8, 1785, the deputy surveyor of district No. 4, in whose hands a warrant for 1000 acres was placed, could not, after surveying the larger portion in his own district, go over into district No. 5 and survey the residue: and such survey is, as to such residue, void against a survey made under another warrant, by the deputy surveyor of district No. 5.

ERROR to the common pleas of *Indiana* county.

This was an ejectment in which William Prout and Heth F. Camp, plaintiffs in error, were plaintiffs below, and Richard Bard was defendant, and a verdict and judgment were rendered for the defendant.

The plaintiffs showed a warrant granted to John Nicholson on the 5th of March 1793, and numbered 3744 for 1000 acres of land within the last purchase from the Indians, east of the Allegheny

river; and a survey upon that warrant on the 23d of August 1794, to John Nicholson for 1020 acres at the canoe place, adjoining the old purchase line in district No. 5, by William P. Brady, deputy surveyor of that district, which was returned and accepted in the surveyor general's office on the 21st of March 1807. This survey included the land in dispute. They further showed a report of two of the commissioners of the Nicholson estate that they had sold this tract, amongst others, to Henry Baldwin, on the 7th July 1807, and that it was patented to George Bomford on the 26th of October 1835, and that George Bomford's title was now vested in them.

The defendants, to show title out of the plaintiffs, exhibited a warrant to John Nicholson dated April 2, 1794, numbered 5602, for 1000 acres within the last purchase—a survey made on this warrant on June 19, 1794, by James Hunter deputy surveyor of the district No. 4, and returned and accepted on July 15, 1794. They also showed a report of the commissioners of the Nicholson estate that this land was sold to James Hopkins, Esq., on March 10, 1808.

The court below charged the jury as follows:

Both warrants are, what is termed general warrants, that is they do not call for land in any particular place, and as between such warrants the general rule is that the first survey holds if returned within a reasonable time. The warrant under which the plaintiff claims is the oldest in date, but there was no survey made on that warrant until a lapse of more than seventeen months. In the mean time the warrant which the defendant relies upon had been surveyed and returned into the surveyor-general's office and was then full notice to all the world of the appropriation of the land described in the survey. The survey of August 1794 was never returned till 1807, and such laches would surely postpone any survey.

But the plaintiffs rely upon the 15th section of the act of 1705, which provides that on making any survey by any deputy surveyor he shall not go out of his proper district to perform the same. And every survey made by any deputy surveyor without his proper district shall be void and of none effect. It does appear upon the return by Hunter, that he embraced a triangle of land in the survey returned by him, which lay in Brady's district, containing according to the calculation in the re-survey, 224 acres, but by far the greatest body of the land embraced was in the proper district. The facts were apparent to the surveyor general on the face of the return, and he adopted it with full notice. Under these circumstances we do not think the objection against the survey ought to prevail. The act of assembly contemplates a deputy going out of the known limits of his district and making an entire survey, but we do not consider that the legislature contemplated that if the deputy in making a survey should, as a matter of convenience, or

to make the survey of a convenient form, include a comparative small portion of land lying in an adjoining district, that therefore the proprietor of the warrant should lose a portion of the land which he had paid for, particularly when the adverse survey had lain dormant for a period of twelve or thirteen years. As this is the only ground insisted upon by the plaintiffs, we instruct you that if you believe the survey given in evidence by the defendants never to have been abandoned, that the representatives of Hopkins have never thrown up the land, that it is such an available outstanding title as defeats the present plaintiffs.

To this opinion of the court, the counsel for the plaintiffs excepted, and the court sealed a bill of exceptions.

*Foster* and *Forward*, for plaintiffs in error, contended, that the survey made by James Hunter, so far as regarded that portion of the tract which lay in the 5th district, was null and void, and passed no title whatever, being directly within the 15th section of the act of April 18, 1785, which enacts that in making any survey by any deputy surveyor, he shall not go out of his proper district to perform the same, and that every survey made by any deputy surveyor *without his proper district, shall be void and of none effect.* The proper mode to have been pursued to survey the part lying in another district, was to have had the warrant certified by endorsement, and re-directed to the deputy surveyor of No. 5, according to the provisions of the 3d section of the act of April 18, 1785. Here it was impossible for those under whom the plaintiffs claimed to obtain a knowledge of the survey by Hunter, by examining the books of the deputy surveyor of district No. 5, and he is not required, nor could he be expected to look into the books of the deputy surveyors of other districts. It was a fraud in those under whom the defendant holds, if there was vacant land enough in district No. 4, to cross over into district No. 5, making no entry of their warrant in district No. 5. The case of M'Namara *v.* Shorb, 2 *Watts* 288, is relied on by the defendant. But that case arose under the act of April 9, 1781, which merely authorizes the surveyor general to appoint a deputy or deputies in any county in this state, who shall have power to make and return into the land office surveys of land only in the county for which such deputy or deputies shall be appointed, but it does not declare, as the act of April 8, 1785, does, that a survey made by any deputy surveyor without his proper district, shall be void and of none effect. There is a great difference in the language of the acts, and the court must make a similar difference in their construction. Besides that was the case of a warrant granted for land on which an actual personal resident settlement was made, and kept up, till the warrant was granted calling for a certain number of acres of land with the improvements. In the case before us there was no settlement, but the warrant was executed on vacant land, and must be maintain-

[Prout v. Bard.]

able under the provisions of the act of 1785, or else is null and void.

*Purviance*, for defendant in error, insisted that the case fell within the reasoning and principle of the case of M'Namara *v.* Shorb, 2 *Watts* 288, if not within the decision. But in addition, it is well settled that the surveyor-general himself might make a survey on a warrant in any part of the state, and he might at his pleasure appoint a special deputy, or ratify the act of a deputy not originally authorised. Harris *v.* Monks, 2 *Serg. & Rawle* 560. By the 12th section of the act of April 8, 1785, the number of districts to be formed within the said new purchase, and the extent and boundaries of each of the districts were to be ascertained and declared by the surveyor-general, to be approved of by the president or vice president in council, who at their discretion might alter the same. Here the warrant could not be split up into parts, but must be surveyed together, and the prohibition in the act of 1785 was not intended to apply to the case where a part of the land to be surveyed lay in one district and part in another, but only where the deputy surveyor went out of his proper district to survey a tract lying wholly in another district.

The opinion of the court was delivered by

Sergeant, J.—We think the language of the fifteenth section of the act of April 8, 1785, is too strong to be got over by any construction that would render its provisions merely directory, and make a survey by a deputy surveyor of one district within the precincts of another district voidable but not void. For the act of 1785, in its whole intent and objects, looks to a new mode of granting, surveying and disposing of the lands acquired by the commonwealth in 1784, by the treaty of fort M'Intosh, commonly called the new purchase. In relation to the mode of surveying the twelfth section is explicit, that the number of districts to be formed, and the extent and boundaries of each, were to be ascertained and declared by the surveyor-general, to be approved of by the president or vice president in council, who might, at their discretion, alter the same. These districts were accordingly marked out and designated, and deputy surveyors appointed for each. By the fourth section, the warrants were to be entered in the deputy surveyor's books, that all persons who might apply for lands might be duly informed thereof. And then the fifteenth section declares, that in making any survey by any deputy surveyor, he shall not go out of his proper district to perform the same, and that every survey made by any deputy surveyor without his proper district, shall be void and of no effect. How then can it be held that the deputy surveyor, Hunter, who was appointed for the fourth district, could go out of that district to make a survey of the whole or any part of a tract within the fifth district? No reason appears why he could not survey the

[Prout v Bard.]

whole warrant in his proper district, or that his going beyond the district line, at the instance, 'as we must take it, of the warrant holder, was not purely voluntary. And even if it were not so, yet the policy of the legislature is marked in such plain and explicit language, that to hold the contrary would, we think, be directly at variance with the law.

The present case differs in every material point from the case of M'Namara *v.* Shorb, 2 *Watts* 288, which has been relied on by the defendant below. There the land was within the old purchase, and it has been settled, that the fifteenth section of the act of April 8, 1785, related solely to the lands then lately purchased at Fort M'Intosh. Wright's Lessee *v.* Wells, 2 *Sm. Laws* 201; 1 *Yeates* 286; Harris's Lessee *v.* Monk, 2 *Serg. & Rawle* 560; Creek *v.* Moon, 7 *Serg. & Rawle* 334. The fifteenth section of the act of April 8, 1785, therefore did not apply to the case, but merely the third section of the act of April 9, 1781, which authorizes the surveyor-general to appoint a deputy or deputies in any county of the state, who should have power to make and return into the land office, surveys of land *only* in the county for which such deputy or deputies should be appointed. But this act does not contain the provision in the act of April 8, 1785, making a survey in contravention of its principles null and void; and therefore the act of April 9, 1781, has been construed liberally and as directory merely; whereas the act of April 8, 1785, will not admit such an interpretation. Besides which, the case of M'Namara *v.* Short, arose on a survey made for a settler, who had acquired by actual settlement a right to a warrant for a tract of land which happened to embrace land lying partly in the county of Huntingdon and partly in the county of Centre, and it was considered that a settler under the laws relating to the rights of actual settlers, had a right to embrace his whole quantity of 400 acres in one warrant, and that the hardship of having two warrants and two surveys was not imposed on him. But here the warrant holder could have his warrant laid on any vacant land that he preferred within the district where he had chosen to place his warrant in the hands of the deputy surveyor, and had no claim under the law or any equity whatever to procure a survey by such deputy over his line; nor could it be possible that another warrant holder, proceeding to a survey in district No. 5, could obtain that notice which the law contemplated every subsequent applier should have, by resorting to the books of the deputy surveyor of the proper district.

Judgment reversed, and a *venire facias de novo* awarded.