# Estella D. Silliman, Mary G. Rothermel et al. *v.* William Whitmer & Sons, Appellants.

*Practice, Superior Court—Appeals—Defective assignment—Admission of evidence.*

An assignment alleging technical error in the admission of the certified copy of a record of a judgment under which certain land, which was in controversy, was sold at marshal's sale, also in the admission of the marshal's deed, will be dismissed when parts of the record material to a proper consideration of the objections, have not been printed.

*Deed—Matter of description—Evidence.*

Where the name of a county, erroneously given in a deed, is a circumstance of description, the error is not conclusive against the admission of the deed, there being sufficient other matter of description recited therein to warrant the jury in finding that the land included in the deed was the land bearing the same warrantee names upon which the alleged trespass was committed.

*Deed — Admissibility in evidence—Paper title defective only in part— Trespass.*

A deed is admissible in evidence even if the paper title thereby evidenced be defective as to three of ten tracts covered thereby; no valid reason exists why plaintiffs, claiming under the deed may not recover for the trespass upon that portion of the land covered by the deed, to which it gives a good title.

*Fixtures—Rules in aid of determining—Province of court and jury.*

The question of fixtures or not depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act. Pre-eminence is to be given to the intention of the parties, as declared by them, or which flows from the nature and character of the act, the clear purpose to be served, the manifest relation which the article bears to the realty and the visible consequences, upon its severance, upon the proper and obvious uses of it. Sometimes this may be declared as matter of law, but when the facts are in dispute, or different inferences may be drawn legitimately from them, the question of intention is one of fact for the jury.

*Fixtures—Tramway on timber land—Question for jury.*

While the great question in the case was whether a tramroad erected on leased timber lands was for the permanent improvement of the lands on which it was built, and was a part of the realty, or was for the mere temporary convenience of the operators or jobbers in the lumbering operation and was therefore personalty, such question is one largely dependent on the intention of the parties, and it is for the jury to determine under all the evidence.

*Actions—Trespass—Tortious use of tramroad on timber land.*

If a tramway created by tenants on leased timber land is part of the realty the use of tramroad by assignees of the tenants, not having unrestricted right of way across the land, for the purpose of transporting lumber from other lands is tortious and for such a use an action will lie.

*Usage—When it may become part of contract.*

A usage, if it be ancient, notorious and reasonable, may enter into and become part of a contract; it may even add incidents to it if they are not inconsistent with its terms, but it cannot be set up to annul or defeat the provisions of a special contract.

*Usage may not defeat fixed principles of property.*

When on a given state of facts the ownership of property is fixed by the general principles of the common law in one person, it is not competent to show that according to a local or trade usage it is deemed by those in the trade to belong to another person.

*Usage—Intention of recognition—Contract—Evidence.*

Usage rests upon the presumption that the parties, in making a contract, do so with the intention that the usages of the place or trade should be regarded as a part of the contract; where it is not offered to be shown that a usage existed so long prior to the time of contract, as presumably to be known to the parties, some of whom were not in the business, or even that it existed at all at the time the contract was made, evidence of such usage in aid of the contract is properly rejected.

*Estoppel—When it may be set up.*

One is estopped from alleging the truth only when his falsehood or his silence has induced action by the other party that would lead to loss except for the estoppel.

*Estoppel by act of cotenant—Essentials.*

Acts of a cotenant may not be set up in estoppel which do not amount to an unequivocal assertion of a fact inconsistent with the truth, and do not reasonably induce belief contrary to the truth.

Argued Feb. 14, 1899. Appeal, No. 1, Feb. T., 1899, by Robert F. Whitmer et al., surviving partners doing business in the name of William Whitmer & Sons, from judgment of C. P. Union Co., March T., 1896, No. 22, on verdict for plaintiffs. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Trespass. Before McCLURE, P. J.

It appears from the record and evidence that the plaintiffs, claiming to be owners of numerous tracts of unseated land,

made a written contract with Lewis Rothermel, one of their number, and Albert Lichtenwalter, selling them all the timber growing on the said land, the same to be cut down and carried away within a period of ten years, providing for a certain quantity to be cut each year and the method of payment. The contract gave to Rothermel and Lichtenwalter the right to use all the lumber necessary for building tramways, roads, houses, sawmills and other improvements; also allowed $1,300, as an offset to timber, to be used in the construction of tramways on the lands. It appears also that there were some intervening tracks between the point of shipment and the land claimed by the plaintiffs over which the lessees or grantees owned and operated a tramway. Rothermel and Lichtenwalter constructed the tramway provided for in the agreement and prosecuted business and operated their tramway until March 9, 1888, when Lichtenwalter sold his interest to Rothermel by deed of that date. This deed purported to convey " everything owned jointly by Lewis Rothermel and Albert Lichtenwalter," and recited sawmill and all machinery, locomotive, houses, stables, offices, office fixtures, lumber trucks, tramway, tools, etc. This sale was consented to by plaintiffs in writing. Rothermel died directly thereafter on June 8, 1889, having by his last will and testament given to his wife, Mary G. Rothermel, one of the plaintiffs, all his property, and made her his executrix. Mary G. Rothermel resold to Albert Lichtenwalter all the interest of her late husband in the operation. This was agreed to by the plaintiffs. Lichtenwalter having gone into possession and operation of the lands above mentioned under the purchase from Mary G. Rothermel, partially reconstructed the tramroad thereon, and the defendants in the present case made an agreement by which said Lichtenwalter undertook and agreed within six months from date to construct a railroad or tramway into and upon the said lands, for the purpose of enabling both parties to take timber from the lands above mentioned; it being further provided by agreement that the whole road or tramway should be equally and jointly owned, the one half by Lichtenwalter and the other one half by these defendants. By deed of July 25, 1889, Lichtenwalter contracted to pay certain sums to Mary G. Rothermel and gave judgment notes in part payment of the consideration of his purchase. Mary G. Rothermel entered judgment against

Lichtenwalter and issued execution thereon, levying upon all of his interest in the operation, "the said tramroads being sold together with his rights of way over said lands," the defendants becoming the purchasers of said tramroads and rights of way. The plaintiffs claiming to own the tramway constructed as aforesaid brought trespass against the defendants for using the same.

Other facts appear in the opinion of the court.

[At the trial the court admitted in evidence on behalf of plaintiffs, under objection of defendants, the certified record of a judgment in the United States circuit court and the execution on same, by virtue of which it is alleged the lands claimed by plaintiffs were sold.] [1]  [The court also admitted in evidence on behalf of the plaintiffs, under objection of defendants, the deed of John M. Davis, marshal for the western district of Pennsylvania, to Abraham Kerns.] [2]  [The court also admitted in evidence on behalf of plaintiffs the deed of John C. Smith and wife to Alexander Silliman et al.] [3]  [The court rejected evidence offered by defendants to show the usage of trade as to the ownership of a tramroad constructed in lumbering operations.] [4]

The plaintiffs presented the following points, which points were affirmed:

[4. That a partial destruction of said tramway by the flood of 1889 did not relieve the said Lichtenwalter and Rothermel from the duty of reconstructing the same, and the uncontradicted evidence in the case is that they did reconstruct said tramway after the flood of 1889 for the purposes mentioned in the contract of October 30, 1885.] [6]

[6. That there is no privity of contract between the plaintiffs and defendants in this case, and if the jury find from the evidence that the plaintiffs in this suit are the owners of the land upon which said tramway was constructed and that the defendants by their servants and employees entered on the property of the plaintiffs at any time between the 1st day of March, 1894, and the present time with their dinkeys and cars, they are trespassers and plaintiffs are entitled to recover.] [7]

[8. That there is no evidence in the case that shows that the defendants had a right of way over the lands of the plaintiffs.] [8]

The court refused to affirm defendants' fourth point as follows:

[4. That as the agreement of October 30, 1885, is silent as to who was to own the tramroad therein mentioned after its completion, the ownership of it is to be determined from all the evidence in the cause, taking into consideration particularly the fact that this tramway was constructed to remove timber from the plaintiffs' land; that it has no outlet except through the lands of others over which the plaintiffs had no right of way; that the first road was built with lateral stringers and wooden rails and was in large part destroyed by the flood of 1889, and that the road used by the defendants was a new road built with cross ties and steel rails, paid for wholly by Lichtenwalter and these defendants; and also taking into consideration the construction placed upon the agreement by the parties themselves by their sales of the tramroad and contracts relating thereto as their own personal property, and the sale of the same by Mrs. Mary G. Rothermel, one of the plaintiffs, as the property of Lichtenwalter, and all the circumstances surrounding the transaction. *Answer:* In reply to this point we say, that the ownership of the road is to be determined from all the evidence in the case and the circumstances surrounding the transaction.] [11]

[5. That the sale of the tramway by Lichtenwalter to Rothermel and the resale of the same by Mrs. Rothermel to Lichtenwalter as shown by the written agreements, ratified by the plaintiffs, is stout evidence to be considered by the jury in determining the ownership of the tramway. *Answer:* These circumstances are evidence, and the weight to be given them is for the jury.] [12]

[6. That the agreement of October 30, 1885, between plaintiffs and Lewis Rothermel and Lichtenwalter, gave to them the possession of the land occupied by the tramway which they constructed, and when Lichtenwalter sold all his interests under the agreement of October 30, 1885, to Rothermel, with the written consent of the plaintiffs, allowing Rothermel to associate with him in the business whomsoever he chose, and Mrs. Rothermel then resold to Lichtenwalter with the consent of the plaintiffs, it gave to Lichtenwalter the possession of the tramroad, with all the rights of Lewis Rothermel as to the same, and plaintiffs had no interest in the same and cannot maintain this action for the use of the same by the defendants, who succeeded to all Lichtenwalter's rights and title therein and thereto. *Answer:* The sixth point is refused.] [13]

[7. There is no evidence that the defendants ever used the original tramway constructed by Rothermel and Lichtenwalter under the agreement of October 30, 1885, and therefore no damages can be found against them for such use. *Answer:* The seventh point is refused.] [14]

[8. The evidence in the case is that the defendants used a different tramway than the one constructed by Rothermel and Lichtenwalter in conformity with the agreement of October 30, 1885, by the plaintiffs. *Answer:* The eighth point is refused.] [15]

[10. If the jury find from the evidence that Mrs. Rothermel, one of the plaintiffs, sold the tramway in dispute with the consent of her co-owners, the other plaintiffs, as is set forth in the agreement of July 25, 1889, there can be no recovery by the plaintiffs. *Answer:* The tenth point is refused.] [18]

[15. The undisputed evidence being that Mrs. Mary G. Rothermel, one of the plaintiffs in this case, and one of the owners of the land in question by the same title as the other plaintiffs, sold the tramroad in question, with the rights of way over the land on which the same was located, as the property of Albert Lichtenwalter, by sheriff's sale on February 21, 1894, to these defendants, she is estopped from asserting title thereto as against these defendants, or damage for the use thereof by them, and the plaintiffs cannot recover. *Answer:* Refused.] [20]

The court charged the jury, inter alia, as follows:

[By the extension of 1889, the right of way was to be given to Lewis Rothermel and whoever he might associate with him after the timber was all removed. But there is no evidence that the timber was all removed, so there has no right of way been acquired over those lands by any person. If you find in this case that the plaintiffs are owners of the land and the defendants ran their cars over it with timber on from other lands they would be trespassers, and your verdict should be in favor of the plaintiffs.] [9]

[Burden was on the defendants to show that timber was off the land in order for them to have a right of way over it; the presumption is, in the absence of proof, that the timber or a portion of it at least still remained on the land.] [10]

The jury rendered a verdict in favor of plaintiffs against

defendant for $150 and found in answer to a question of the court as to the owner of the tramroad for the plaintiffs.    Defendants appealed.

*Errors assigned* among others were (1–4) to rulings on evidence (sufficiently indicated in the statement of facts).  (6–8) In affirming plaintiffs' fourth, sixth and eighth points respectively, reciting same.    (9, 10) To portions of the judge's charge, reciting same.    (11–14, 15, 18, 20) In refusing defendants' fourth, fifth, sixth, seventh, eighth, tenth and fifteenth points, reciting same.

*Andrew A. Leiser* and *Joseph C. Bucher*, with them *Samuel H. Kaercher*, for appellants.—To support an action of trespass quare clausum fregit plaintiff must prove exclusive possession or valid legal title.

In trespass to try title, to entitle the plaintiff to recover over against a naked possession, he must show that he is the absolute owner of the land in controversy, not only as against defendant, but as against all other persons: Hooper v. Hall, 35 Texas, 82; Tally v. Thorn, 35 Texas, 727; 26 Am. & Eng. Ency. of Law, 685.

The possession of the owner of a part of a tract of land is the possession of the whole tract only so long as no other person is in the actual adverse possession of any part.    As soon as another takes possession of any part, either with or without title, the former possessor loses the possession of that part, and cannot maintain trespass for any act done on such part while he is thus out of possession of it: Ring v. King, 4 Devereux & Battle (N. Car.), 164; 26 Am. & Eng. Ency. of Law, 586, note 3. See, also, Barnstable v. Thacher, 44 Mass. 239.    Constructive possession is not enough: Mather v. Trinity Church, 3 S. & R. 509; plaintiffs must be owners of the title: Irwin v. Patchen, 164 Pa. 51.

In the present case the tracts on which trespass was alleged are unseated.    No actual and exclusive possession was asserted by plaintiffs; hence proof of valid legal title was absolutely necessary.

To meet this plaintiffs offered at the trial sundry records and deeds the admission of which is made the basis of the first, second and third assignments of error.

And, apart from the fact that by this deed these plaintiffs acquired no title to any lands in Union county, said deed was irregular and defective in that it was not duly acknowledged before the court out of which the process issued upon which the sale was made. That this was a fatal defect is apparent from the authorities: Dehaven's Appeal, 38 Pa. 373; McCormick v. Meason, 1 S. & R. 92; Chambers v. Carson, 2 Wharton, 437.

The court erred in rejecting defendants' offers to prove that by the well known custom of lumbermen tramroads built as this one was are the property of the operator and not of the landowner: McMasters v. Railroad Co., 69 Pa. 374; Carter v. Coal Co., 77 Pa. 286.

Evidence of a custom of trade is admissible to explain an ambiguous contract, not to contradict it: Stokes v. Fenner, 30 Leg. Int. 84; 10 Phila. 14.

Evidence of the usual custom of trade is sufficient to affect a party with notice: Whitesell v. Crane, 8 W. & S. 369.

Evidence of a general custom is admissible, not to control, but to aid in the construction of a statute: Steiner v. Coxe, 4 Pa. 13.

In the construction of a written contract a usage of trade known to the parties not unreasonable or in conflict with positive law is admissible to explain the intention and give effect thereto: First Nat. Bank v. Fiske, 133 Pa. 241; cf. McDonough v. Jolly Bros., 165 Pa. 542; Centenary M. E. Church v. Clime, 116 Pa. 146.

That a contract for sale of timber shall be construed with reference to a general custom, see Dexter v. Lathrop, 136 Pa. 565, and Carter v. Coal Co., 77 Pa. 286.

It is admissible to add incidents to a contract which are not inconsistent with its terms, and to ascertain the intention of the parties in reference to matters about which the contract is silent: Clark's Browne on Usages & Customs, 51.

That title to Lichtenwalter's interest in these contracts or leases and the tramroad erected thereon would pass by the sheriff's sale on fi. fas. on the judgments of Mrs. Mary G. Rothermel is well settled: Church v. Griffith, 9 Pa. 118; Williams v. Downing, 18 Pa. 60.

In the construction of a contract where the language used by the parties is indefinite or ambiguous and of doubtful con-

struction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence: Topliff v. Topliff, 122 U. S. 121; Chicago v. Sheldon, 76 U. S. 50.

The plaintiffs had no right to declare a forfeiture at the time of the sheriff's sale. There is no proof of any such notice or forfeiture at any later time, nor of any other notice soever to Lichtenwalter or to these defendants. There could, therefore, be no forfeiture: Wanamaker v. McCaully, 11 W. N. C. 450; Duffield v. Hue, 129 Pa. 94–109; Lynch v. Gas Co., 165 Pa. 518; Steiner v. Marks, 172 Pa. 400; Cogley v. Brown, 11 W. N. C. 224.

And we submit, first, that all these plaintiffs are estopped by their acts and contracts and by their silence and acquiescence.

We submit, secondly, that Mrs. Mary G. Rothermel, one of the co-owners and tenants in common of the lands over which said tramroad was built and operated, and one of the plaintiffs in this case, was and is estopped to claim ownership of said tramroad or to interfere with the use and operation thereof by these defendants, (1) by her acts and contracts in the premises as well as by the acts, etc., of her predecessor in title, Lewis Rothermel, to wit: (*a*) by his purchase of, inter alia, said tramroad from Lichtenwalter under deed of March 9, 1888; (*b*) by his ratification of such sale and purchase by deed of April 24, 1888, in which he was a party of the first part qua owner of the land; by her joinder in agreement of July 25, 1889; by her sale of same to said Albert Lichtenwalter; (2) by her silence and acquiescence; (3) by the record and her acts relative to the seizure and sale of said tramroad upon execution issued at her instance.

That, under these facts, all these plaintiffs are estopped to deny to these defendants title in this tramroad and the right to use the same, is plain under the authorities: M'Kellip v. M'Il-henny, 4 Watts, 317; Epley v. Witherow, 7 Watts, 163; Tarr v. Robinson, 158 Pa. 60.

But whether all the plaintiffs are estopped or not, it is plain that Mary G. Rothermel is estopped.

But if she is estopped then there can be no recovery as to her. And if no recovery as to her, there can be no recovery as to the rest, for all must recover or none. There can be no severing in the action. The injury, if any, is joint, and so must

be the suit and so must be the recovery.   A little leaven leaveneth the whole lump.   Her disability is the disability of all for the purposes of this suit.

That this is true is clear under the authorities : 2 Selwyn's Nisi Prius, 1258, 1306 ; Irwin v. Brown, 35 Pa. 331.

A fixture erected by a tenant on demised premises for the purposes of trade is personal property and may be removed by him within the term : Watts v. Lehman, 107 Pa. 106.

So, again, the matter of fixtures is a question of intention and when the contract is silent the intention of the parties is to be gathered from their acts and declarations : Seeger.v. Pettit, 77 Pa. 437 ; Benedict v. Marsh, 127 Pa. 309 ; Electric Light Co. v. Goodman, 129 Pa. 206.

And all their acts and contracts plainly show that all these parties regarded this tramroad as the personal property of Lewis Rothermel and Albert Lichtenwalter, as set forth under the eighth assignment of error.

And all this is in addition to the fact that this tramroad as reconstructed was wholly paid for by Lichtenwalter and these defendants and not $1.00 of its cost was furnished by the plaintiffs.

It would be rank injustice to permit the plaintiffs to recover damages for the use of this tramway, constructed and paid for by the defendants.   We confidently expect a reversal of the judgment, which was unwarranted by the law and the evidence and is contrary to all equity.

*W. F. Shepherd* and *Samuel H. Orwig*, with them *John F. Duncan* and *Philip B. Linn*, for appellees.—Plaintiffs having shown more than a naked possession, an absolute ownership of the land on which the trespass was committed, are entitled to recover: Hooper v. Hill, 35 Texas, 82.

No one could acquire a right of way over appellees' lands without appellees' consent.

This is a lumbering plant of great value and extent, covering upwards of 7,000 acres.   The tramway is indispensable in carrying on the specific business, and is a part of the realty.

It was therefore proper to submit its necessity and value to a jury: Ege v. Kille, 84 Pa. 333 ; Morris's Appeal, 88 Pa. 368.

The rule of law in relation to fixtures cannot be evaded by

proving a custom in opposition to it. Such evidence is inadmissible: Christian v. Dripps, 28 Pa. 271.

The custom, even if proved, was unreasonable and therefore invalid: Anewalt v. Hummel, 109 Pa. 271.

The expressions of the courts are perhaps unanimous to the effect that the operation of settled rules of law cannot be changed by proof of a usage having contrary effect: 27 Am. & Eng. Ency. of Law, 782, et seq.

The remaining assignments of error are but reiterations of the same points in different dress. There is absolutely no defense in fact or in law to this action of trespass, and counsel for appellees respectfully submit that it would be oppressive to send this case back, on some immaterial technicality, for retrial. The case pending in equity is suspended while this suit is un- determined. Until then the plaintiffs are suffering a daily loss by reason of the total destruction of their tramway which is necessary and indispensable for the proper prosecution of their business.

Costs should be imposed on appellants under section 21 of the Act of Assembly of May 19, 1897, P. L. 67.

OPINION BY RICE, P. J., July 28, 1899:

In making out their paper title to the lands upon which the alleged trespass was committed the plaintiffs offered in evidence a certified copy of the record of a judgment in the Circuit Court of the United States against James Wilson, and of the execution issued thereon, by virtue of which, it is alleged, the lands in controversy were sold at marshal's sale; also the deed from the United States marshal to Abraham Kerns, pursuant to this sale. Numerous objections of a technical nature were made to the offer, but as the parts of the record material in any proper consideration of the objections have not been printed, we have no means of knowing whether they are well founded or not. Therefore, the first assignment of error is dismissed. See Rule 17, and P. & L. Dig. of Dec. & Ency. of Pa. Law, 878.

So far as the objections to the marshal's deed are based on the record above referred to they should be dismissed for the same reason. The objection that the deed does not cover the land in dispute is not well taken. This comprises ten tracts, known

as the Weiker run lands, surveyed in 1794, on warrants dated
in 1793, and patented to James Wilson in 1795. All these
tracts are described in the warrants, surveys and patents as being
in Haines township, Northumberland county. No question is
raised as to the correctness of this description. In the marshal's
deed made in May, 1833, tracts in the same warrantee names
are described as being in Haines township, Centre county, and
also as originally being in Northumberland county. It seems
that at the date of this deed the part of Haines township in
which these tracts were located was wholly or in great part in
Union county, which had been erected out of Northumberland
in 1813. Centre county had been erected out of part of North-
umberland county in 1800, and although it included part of
Haines township it is not claimed that it included that part in
which these tracts were located. They were left in Northum-
berland county until the erection of Union county in 1813. It
would seem, therefore, that there was a mistake in describing
them in the deed as being in Centre county. The name of the
county given in the deed was a circumstance of description
but not conclusive. The description of the lands by the war-
rantee names and the recital of the fact that when originally
surveyed and patented they lay in Haines township, Northum-
berland county, were sufficient to warrant the admission of the
deed in evidence, and a jury in finding that the land included
in the deed was the land bearing the same warrantee names,
upon which the alleged trespass was committed: Grant v. Eddy,
2 Yeates, 148; Stewart v. Shoenfelt, 13 S. & R. 359; Miller v.
Hale, 26 Pa. 432. The second assignment is overruled.

Even if John C. Smith's paper title to three of the ten tracts
was defective that furnished no valid objection to the admission
of the deed from him, and no valid reason why the plaintiffs
could not recover for the trespass upon that portion of the land
covered by the deed to which it gave them a good title. It
seems scarcely necessary to dwell upon this assignment. The
court committed no error in admitting the deed in evidence.
The third assignment is overruled.

In order to make any discussion of the remaining assignments
intelligible it will be necessary to recite the facts at some length.
It should be premised, that the main question in the case is as
to the ownership of a tramroad constructed on the land. Was

it annexed to the land as a permanent accession to the freehold ? If so, it belonged to the plaintiffs, who were the owners of the land. If not, it was personalty and passed under the sheriff's sale to the defendants. Let us trace the title under which the defendants claim, and look at the circumstances under which the tramroad was laid and the purposes of its construction.

On October 30, 1885, Alexander Silliman, Lewis Rothermel and others, being then the owners of the land, entered into a contract with the same Lewis Rothermel and Albert Lichtenwalter, whereby, in consideration of the moneys to be paid and the covenants to be kept and performed by Rothermel and Lichtenwalter, the former sold to the latter all the timber on a tract of 7,425 acres known as the Weiker run lands and comprising the ten acres above mentioned ; provided, however, that the same should be cut down and removed within ten years. The grantees covenanted to cut and ship certain specified quantities of several kinds of lumber each year and to pay between the 25th and 28th of each month, at certain specified prices, for all lumber, bark, palings and sills shipped from the lands during the previous months ; also " for the proper prosecution of the business, to construct a tramway on said lands, for which the party of the first part agrees to contribute $1,300 (if the same may cost that sum), said $1,300 is not to be advanced in cash, but is to be an offset to timber leave." It is also to be noticed that the grantees were to have the right to use the lumber necessary for building tramways, roads, houses, sawmill and other improvements upon the premises needed in the prosecution of the lumbering business free of charge. It was further provided that " this lease," as it was called, " should not be transferred without the consent of the party of the first part."

The tramway was built and the lumbering operation carried on by Rothermel and Lichtenwalter until March 9, 1888, when Lichtenwalter sold to Rothermel " all his right, title and interest in and to a certain lease dated October 30, 1885 " (the paper above mentioned), " also everything owned jointly by Lewis Rothermel and Albert Lichtenwalter . . . . including sawmill and all machinery, one locomotive, house, stables, offices, office fixtures, lumber trucks, tramway," etc.

By paper of April 24, 1888, recited in deed of July 25, 1889, the plaintiffs consented to this sale of Lichtenwalter's interest

in the original contract, released Lichtenwalter, and agreed in lieu of him to accept any good and responsible party who might associate with Lewis Rothermel in the contract, extending said contract on the same terms and conditions until all the timber should be cut off, and further providing "that after all the timber is cut off, then from that date the right of way is granted over the said tracts of land to the said Lewis Rothermel and whoever he may associate with him for the space of ten years from the time that all the timber is all cut off from said tracts of land."

The tramway originally laid was a stringer road with wooden rails—strap iron in places on top of the rails. In June, 1889, it was partially destroyed by a flood, and shortly afterwards Lewis Rothermel died. A month later, July 25, 1889, Mary G. Rothermel, his executrix, resold to Lichtenwalter all the right, title and interest of Rothermel in the "lease" of October 30, 1885, Lichtenwalter covenanting on his part to "assume all the duties and undertake, perform, keep and discharge all the terms, conditions and covenants upon the part of the parties of the second part in and to said contract . . . . the said contract or lease . . . . being made a part of this agreement for the purposes hereof the same as if the terms, conditions and covenants thereof . . . . by the said Albert Lichtenwalter . . . . to be kept, performed and discharged were herein at length recited and set out." The agreement of Mary G. Rothermel specifically mentions the following property as sold: "The sawmill, including the lath mill located at Pardee; the tramway trucks, locomotive engine, all tramway tools, the office building at Pardee; steam pump; the piece of tramway now remaining on the ground, all the strap iron belonging to tramway." On the same day the plaintiffs executed a deed to Lichtenwalter referring to the several agreements above mentioned and granting their consent to the said sale and transfer of Rothermel's interest subject to covenants of Lichtenwalter as set forth and referred to in the contract of resale to him.

Let us stop for a moment to consider Lichtenwalter's rights in the tramway at this time. Was it the duty of the court to charge the jury as matter of law that it belonged to Lichtenwalter?

Whilst the contract is silent as to the ownership, it is to be

noticed also that no right to remove it is expressly reserved. The fact that the plaintiffs contributed to its construction, that it was deemed to be necessary for the proper removal of the timber from the tracts, and that its construction was part of the expressed consideration for the grant to Rothermel and Lichtenwalter tend to show that it was intended as a permanent accession to the freehold.   On the other hand, it is argued with much force, that the papers executed subsequently, to which we have referred, show that the parties put a construction on the original contract inconsistent with such conclusion.   The question of fixture or not depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act: Meigs's Appeal, 62 Pa. 28; Hill v. Sewald, 53 Pa. 271; Wick v. Bredin, 189 Pa. 83.   The modern authorities give pre-eminence to the intention of the parties, as declared by them, or which flows from the nature and character of the act, the clear purpose to be served, the manifest relation which the article bears to the realty, and the visible consequences upon its severance upon the proper and obvious use of it: Bank v. North, 160 Pa. 303, and see cases cited by Judge ENDLICH at pp. 307, 308; to which may be added Carver v. Gough, 153 Pa. 225, and Muehling v. Muehling, 181 Pa. 483. Sometimes this may be declared as matter of law, but when the facts are in dispute, or different inferences may be drawn legitimately from them, the question of intention is one of fact for the jury: Seeger v. Pettit, 77 Pa. 437; Harmony Assn. v. Berger, 99 Pa. 320; Benedict v. Marsh, 127 Pa. 309; Harrisburg El. Light Co. v. Goodman, 129 Pa. 206.   By their second and fourth points the defendants unequivocally asked to have this question in the present case submitted to the jury on all the evidence.   We think this was proper.   They, at least, have no reason to complain that their request was complied with. The thirteenth, seventeenth and eighteenth assignments are overruled.   The eleventh is also overruled as the answer was a practical affirmance of the point.

Whenever the terms of an agreement are equivocal or doubtful, whenever the language of a contract is ambiguous, the practical interpretation of it by the parties is entitled to great influence: Straus v. Wanamaker, 175 Pa. 213–231; Topliff v.

Topliff, 122 U. S. 121. It may be conceded that the sale by
Mary G. Rothermel to Lichtenwalter and the ratification there-
of by the plaintiffs were acts proper to be considered. They
would have greater significance if it were not for the fact
that there was a tramway, connected it is true with the tram-
way in dispute, but not on the lands of the plaintiff and not
claimed by them. It is argued by the plaintiffs' counsel with
some show of reason that this was the tramway referred to in
the memorandum of agreement of July 25, 1889, between Mary
G. Rothermel and Lichtenwalter. Where the act supposed to
interpret the meaning of a prior contract itself needs interpret-
ing it loses much of its force in determining the rights of the
parties already vested. Moreover the agreement last men-
tioned, although referred to, is not recited in the paper signed
on the same date by the plaintiffs. That paper made no men-
tion of any tramway, and, so far as at present material, merely
granted the consent of the landowners to the "sale and trans-
fer . . . . of the right, title and interest of the said Lewis
Rothermel to and under the said contract or lease of the 30th
October, A. D. 1885, and the extension thereof granted the 24th
April, A. D. 1888, subject, however, to all the terms, conditions
and covenant thereof," etc. It is doubtful if any further ratifica-
tion was intended than was thus expressed. We are of opinion,
without further elaboration, that the defendants' fifth point
was properly qualified. The twelfth assignment is, therefore,
overruled.

Whilst we are upon this subject, namely, the ownership of
the tramway originally constructed, it will be appropriate to
consider the offers of evidence as to usage.

The defendants claimed and offered to show, that, according
to a well-known usage in lumbering operations upon unseated
lands, where the operator or jobber, as he is called in the offers,
contracts with the landowner to construct a tramroad over the
lands and the contract is silent as to the ownership of the same
after it is constructed, it belongs to, and is removable at the
will of, the operator, even though the contract provides that the
landowner shall contribute to the expense of its construction,
and he does so contribute. The rejection of these offers of
evidence is the subject of the fourth and fifth assignments of
error.

Whatever may be the usage which the defendants would have proved if permitted, it is manifest that under the contract of October 30, 1885, the tramroad built at. the joint expense of the landowner and the operator, for the "proper prosecution of the business," that is, for the proper "lumbering" of the tracts, was not removable at the mere "will of the operator." In other words, he was not at liberty to tear up and remove the tramroad, built at joint expense not merely for his convenience but for the proper removal of the timber from the tracts, at any time he might see fit to abandon the contract. A usage, if it be ancient, notorious and reasonable, may enter into and become part of a contract; it may even add incidents to it if they are not inconsistent with its terms, but it cannot be set up to annul or defeat the provisions of a special contract. It must not "go to defeat the essential terms of the contract: " Coxe v. Heisley, 19 Pa. 243. Therefore, so far as this branch of the offer is concerned, it seems to us, the evidence was inadmissible.

The offers were properly rejected upon broader grounds. The proposition viewed in the light of the verdict amounts to this : that it is competent to show by the testimony of witnesses that according to a local, or a trade, usage, property belongs to one person, which by the settled principles of law applicable to the facts belongs to another. Usage is a matter of fact, not of opinion: Gordon v. Little, 8 S. & R. 533, 550. The understanding of a community or of a class as to a legal effect or an implication of law is not a valid usage, and evidence to prove it is not competent to determine legal rights under contracts: Haskins v. Warren, 115 Mass. 514. Such a usage has been characterized as the mere adoption of a doctrine as to the legal rights of parties, such doctrine being contrary to the rules of the common law: Thompson v. Ashton, 14 Johns. 316. Such a usage is not valid ; strictly speaking, it is not a usage at all. In the application of this and the cognate principle that a usage must not be contrary to law, it has been held, that whether or not a particular bond or note is negotiable is a matter of law and no local usage can alter the legal character which the law fixes upon it: Vermilye . v. Adams Exp. Co., 88 U. S. 138; Gunn v. Bolckow, L. R. 10 Ch. 491; Crouch v. Credit Foncier, L. R. 8 Q. B. 374; Hathesing v. Laing, L. R. 17 Eq. 92. Evi-

dence of a custom in a particular place to enter for breach of condition in a ground rent deed in a manner different from that authorized by the rules of the common law is inadmissible: Stoever v. Whitman, 6 Binn. 416. What constitutes a delivery of chattels as between vendor and vendee is a question of law, and the legal rules cannot be changed by proof of a trade usage that when in a cash sale the goods are delivered without prepayment the delivery does not pass title: Haskins v. Warren, supra; Southwestern Freight Co. v. Stanard, 44 Mo. 71; Morse v. Brackett, 98 Mass. 205. Proof is inadmissible of a local usage that a warranty is implied in the sale of certain kinds of goods where in the absence of such usage the common-law rule, caveat emptor, would apply: Wetherill v. Neilson, 20 Pa. 448; Barnard v. Kellogg, 77 U. S. 383, and cases there cited. A local usage as to weights and measures when inconsistent with a statute has been held invalid: Godcharles v. Wigeman, 113 Pa. 431; Evans v. Myers, 25 Pa. 114; Paull v. Lewis, 4 W. 402. In Christian v. Dripps, 28 Pa. 271, it was held that a planing machine, lathes and vises in a machine shop or car factory were fixtures, and as such belonged to the realty, if they were a necessary part of the machinery for carrying on the business, and that the rule of law could not be evaded by proving a custom in opposition to it. This, it is true, was not a case between landlord and tenant, nor between one who contracted to do a certain thing upon the land of another and the landowner, and therefore is not cited as absolutely ruling the present case but simply as illustrative of the general principle under discussion. The recent decision of our Supreme Court in Dempsey v. Dobson, 184 Pa. 588, is, however, very much in point. The plaintiff was a color mixer in the employ of the defendants and brought an action of trespass for the alleged wrongful taking of his color books. On the trial he offered to show, just as the defendants did here, that according to a known usage of the trade these color books containing the recipes and formulas devised by the color mixer belong exclusively to him and that the employer has no interest, title or property in them. The rejection of this evidence was sustained upon two grounds, namely, that the usage was unreasonable and was contrary to law. That a usage must not be contrary to law is laid down as an elementary rule, but after an examination of many cases we

are compelled to confess that is not always easy to determine when the rule applies.   Without attempting, however, to reconcile all the cases upon the subject, we conclude that the present case comes fairly within the general rule, that, if on a given state of facts the ownership of property is fixed by the general principles of the common law in one person it is not competent to show that according to a local or trade usage it is deemed by those in the trade to belong to another person.

There is another objection to, or defect in, the offers, which, beyond all question, prevents us from saying that the court committed error in rejecting them.   The whole theory of usages rests upon the presumption that parties, in making a contract, do so with the intention that the usages of the place or trade should be regarded as part of the contract.   It is as part of the contract that a usage is to be judged: 27 Am. & Eng. Ency. of Law, 712; First Nat. Bank v. Fiske, 133 Pa. 241; McMasters v. P. R. R. Co., 69 Pa. 374; Bremerman v. Hayes, 9 Pa. Superior Ct. 8.   This contract was made in 1885, but the offers do not allege that the usage had existed so long before that time as presumably to be known to the landowners, some of whom, by the way, were not in the business, nor even that it existed at all at the time the contract was made.   A party is entitled to have his contract interpreted in accordance with the general principles of law, unless he made it with reference to a particular usage.   He cannot be presumed to have knowledge of a particular usage which is not shown affirmatively to have existed at the time the contract was made and we have no right to reverse the action of the court below upon a surmise that the defendants might have made their offer broader.   The fourth and fifth assignments are overruled.

It cannot be successfully contended that Rothermel and Lichtenwalter, or Lichtenwalter as the successor of Rothermel, had a right of way to which the defendants succeeded, across the plaintiffs' lands, for the purpose of removing timber from other tracts not belonging to the plaintiffs.   The right of way referred to in the agreement of April 24, 1888, was not to begin until all the timber was removed from the plaintiffs' lands.   And there was no evidence of this essential fact.   Even if, by any construction, it could be held that all the rights of Rothermel and whomsoever he might associate with him passed with undi-

minished force to the defendants by the sheriff's sale of Lichtenwalter's interest in 1894, the burden of proof was on the defendants to show that the time for the enjoyment of the right of way had arrived; in other words that the timber from the plaintiffs' lands had been removed. It is well settled that if a man have a right of way over another's land to a particular close, he cannot extend it to other closes, and this whether his right be by user or by deed: Shroder v. Brenneman, 23 Pa. 348; McCloskey v. Miller, 72 Pa. 151. Prior to the Act of May 25, 1887, P. L. 271, abolishing the distinction between the forms of action ex delicto, the remedy for such wrongful use by the person in possession would have been by an action of trespass on the case. Under that act the damages are recoverable in an action of trespass. If, therefore, the tramway was part of the realty, as the jury have found it was, and if, as we have endeavored to show, the defendants had not an unrestricted right of way across the plaintiffs' lands, the use of the tramroad for the purpose of transporting lumber from other lands was tortious, and for such use an action would lie. The seventh, eighth, ninth and tenth assignments are overruled.

Thus far we have devoted our attention principally to a consideration of the rights of the parties under the original contract of October 30, 1885, and the supplemental agreements of April 24, 1888, and July 25, 1889. We now come to a consideration of the evidence as to what was done after the execution of the last mentioned agreement.

After the transfer to him on July 25, 1889, Lichtenwalter reconstructed the tramroad, at least partially, and subsequently replaced it with an iron tramroad under the following circumstances:

On January 1, 1890, Lichtenwalter entered into a contract with Whitmer & Sons, these defendants, who owned what were known as the Treaster valley lands lying to the west of the plaintiffs' lands, in which it was agreed that Lichtenwalter would within six months " construct a railroad or tramway into and upon the said lands for the purpose of enabling both parties to take timber from the lands above mentioned . . . . by extending the railroad or tramway now made and existing . . . . to and upon all of said lands; " also that " the whole railroad or tramway when completed as aforesaid, shall be equally and

jointly owned, the one half belonging to the said party of the first part (Lichtenwalter), and the one half belonging to the said party (Whitmer and Sons) of the second part," etc.

On September 20, 1890, Lichtenwalter "leased" from the Steel Railway Supply Company a quantity of twenty pound steel rails, splice joints and railroad spikes, and with these and other steel rails and materials relaid and reconstructed the tramway on the plaintiffs' lands, and extended it to the Treaster valley lands. After the sheriff's sale to which I shall refer hereafter the rights of the Steel Railway Supply Company were transferred to the defendants.

Thus far it is clear that no privity is shown between the plaintiffs and these defendants, at least none such as would defeat the action. The latter and the supply company entered into the two last mentioned contracts with Lichtenwalter with full notice of all the latter's obligations and the plaintiffs' rights under the contract of October 30, 1885, and its supplements. If the existing tramroad was a part of the realty—as under the verdict of the jury we must assume it was—its character was not changed in consequence of any arrangement which Lichtenwalter made with third persons concerning the materials used in its reconstruction, or concerning its ownership. The rights of such persons rise no higher than would the rights of Lichtenwalter if he had reconstructed the tramroad with materials purchased with his own money exclusively and for the sole purpose for which the road was originally constructed. As we understand the case the transfer to Lichtenwalter on July 25, 1889, put him precisely where he would have been if the contract of October 30, 1885, had been made with him alone and there had been no subsequent transfers. If anything, his obligation to reconstruct the tramway and put it in condition to carry out the purposes of the contract is plainer, for he renewed the covenants of that contract in the full light of the fact that it was necessary for him to do so if he was to perform the other covenants and conditions. And, although he reconstructed it of different materials and not wholly on the precise line of the original road yet, as between the parties to this action, the judge was clearly right in holding that the tramroad as reconstructed after the flood of 1889 must be deemed the same in nature, whether realty or personalty, as that origi-

nally constructed for the purposes of the contract of October 30, 1885. He had no right to build a tramroad on the land for any other purpose. The criticism of the language of the plaintiffs' fourth point, which was affirmed, based on the fact that Rothermel was dead and had nothing to do with the reconstruction, does not require serious consideration. The sixth, fourteenth, fifteenth and sixteenth assignments are overruled.

We come now to the last question requiring particular notice, namely, the question of estoppel. It arises in this way:

When Mary G. Rothermel, executrix (who it is to be noticed is one of the plaintiffs in this action), sold to Lichtenwalter she took three judgment notes for the price, and in December, 1893, entered them of record and issued executions returnable to March term, 1894. Later, fifteen other fi. fas. were issued by other creditors returnable to the same term. The returns to these executions are not printed, as they ought to have been. It appears, however, that on February 3, 1894, the sheriff indorsed on the Mary Rothermel executions the following levy: " By virtue of sundry writs of fi. fa., March term, 1894 . . . . I this day levied on the goods and chattels of A. Lichtenwalter, to wit: . . . . also defendants' interest in tramrailroad, and all other personal property belonging to the defendant."

The defendants' proposition of law may be stated thus: In the action of trespass quare clausum fregit all the cotenants must join as plaintiffs ; if one of them be estopped to maintain the action, his cotenants are precluded from maintaining it; Mary G. Rothermel, one of the cotenants of the land, having caused the tramroad in question to be levied on and sold as the property of Albert Lichtenwalter, is estopped to deny the title of the purchaser, these defendants ; therefore, the court should have given binding instructions, that the action, so far as it related to the subsequent use of the tramroad by the defendants for the purpose of transporting lumber from the Treaster valley lands, could not be maintained.

Granting, for the purposes of the argument, the correctness of the legal proposition that her coplaintiffs would be barred from maintaining the action, if Mary G. Rothermel was estopped, does it clearly and distinctly appear that she levied upon and sold the identical tramroad now in question ? That the sheriff undertook to sell it would seem clear from the bill

of sale delivered to the purchaser. But that does not import verity as to her, and it is to be noticed that he had in his hands fifteen other executions with which Mary G. Rothermel had no concern, and over which she had no control. For aught we know it may have been levied on and sold under those writs. She is affected with notice of, and responsible for, the levy made on her writs, but there is no assertion of a fact clearly implied in that levy, which is necessarily inconsistent with her present claim. The language "interest in tramrailroad" is reasonably referable to the tramroad or part of a tramroad which he owned, not on the Weiker run lands. It is to be observed further that distinct notice was given at the sale that Lichtenwalter's rights under the contract of October 30, 1885, and supplemental agreements, were terminated, that the tramroad constructed on the lands described in that agreement was realty, and that no title would pass to the purchaser at the sheriff's sale. This notice, it is true, was signed by the attorneys for but two or three of the landowners, but there is nothing in it to indicate or to reasonably lead bidders to suppose that they were not speaking for all their cotenants. It was sufficient to put them on inquiry as to the rights of all the owners of the lands. See Ross v. Baker, 72 Pa. 186, and cases there cited. Construing this notice and the levy on the Mary G. Rothermel executions together, bidders ought to have inferred, if they inferred anything, not that she was asserting one thing as to the ownership of the tramroad and her cotenants another thing, but that the levy on her writs was referable to a tramroad, or part of a tramroad not on the Weiker run lands.

Having induced action by another on a belief in a given state of facts, it is unjust to permit him who induced the action to deny the facts and strip the action of the protection which they would have afforded. But one who has not been misled cannot invoke this doctrine in his behalf. The rule, as repeatedly stated in the cases, is, that one shall be estopped from alleging the truth, only when his falsehood or his silence has induced action by the other party that would lead to loss except for the estoppel: Sensinger v. Boyer, 153 Pa. 628. Acts which do not amount to an unequivocal assertion of a fact inconsistent with the truth, and do not reasonably induce belief contrary to the truth, and consequent action based on that belief, cannot bind

as an estoppel. To say the least, the evidence in this case taken as a whole does not show such an unequivocal assertion on the part of Mary G. Rothermel that the identical tramroad in question was personalty and belonged to Lichtenwalter as would have justified the court in declaring as matter of law that she and her cotenants were precluded from proving the truth; particularly as distinct notice was given at the sheriff's sale of the plaintiffs' rights. The nineteenth, twentieth, twenty-first and twenty-second assignments are overruled.

The great question in the case was whether the tramroad was for the permanent improvement of the lands on which it was built, and was a part of the realty, or for the mere temporary convenience of the operators or jobbers in the lumbering operation and was personalty. The question was one largely dependent on the intention of the parties and was for the jury to determine under all the evidence, as the defendants correctly contended in their second and fourth points. We think it was fairly submitted to the jury, and that no error was committed in the trial which calls for reversal.

In some particulars the appellants paper-book does not conform strictly to our rules of court, but the defects and omissions are not such as to warrant us in sustaining the plaintiffs' motion to suppress it. The motion is denied.

The judgment is affirmed.