## Smith *versus* McNeal.

1. M. delivered to J. logs to saw, J. refusing to redeliver them, M. brought trover. J. proved that he had been in possession of the land from which the logs had been cut for many years, had exercised acts of ownership and had forbidden M. to cut. This would be a good defence.

2. M. gave evidence that he had bought the land from A., and that about the time, J. had frequently said that the land belonged to A., that J. was A's agent, &c. This would estop J. from claiming the logs.

3. Evidence that A. held the land in trust for J., there being no question raised by the pleading as to the title of the *locus in quo*, was irrelevant.

4. The question being estoppel as to M., evidence of the relations between A. and J. was irrelevant.

5. Estoppel arises where one misrepresents or by wilful silence misleads another, not having knowledge, into loss, or induces him to do what he would not if he had known the truth, and injury would ensue from permitting the misleading party to allege the truth.

March 14th 1872.   Before Thompson, C. J., Read, Agnew and Sharswood, JJ.   Williams, J., at Nisi Prius.

Error to the Court of Common Pleas of *Bradford county :* Of January Term 1871, No. 133.

On the 1st of August 1867, Jacob McNeal brought an action of trover against Israel Smith for a quantity of lumber, which plaintiff valued at $200; the plea was "not guilty."

The plaintiff gave evidence that in the winter of 1866–67, he took logs to the defendant's mill to be sawed; in July 1867, plaintiff demanded the lumber from the defendant, and tendered him the price of the sawing; the defendant refused to deliver the lumber, saying that it was his own; that the logs had been taken from his land; plaintiff, when he asked the defendant to saw the logs, said to him that he was going to take them from land which he had purchased from A. B. Smith; he told defendant where the lot was, and the defendant knew where it was.

The defendant gave evidence of a long-continued possession by him of the land; that the plaintiff lived with his father, who held a lease of the land from A. B. Smith, but it was controlled by defendant, and he notified the father to leave the place, but before he left he cut some logs near where these came from, after he had been forbidden by the defendant, who told him that he was owner of the logs.

The plaintiff in rebuttal gave evidence deducing to Alanson B. Smith the title of a tract of which that from which this timber was taken is a part, by purchase at sheriff's sale, under the judgments, &c., Joseph Wilkins and others, &c., the judgments referred to in the preceding case (Smith *v.* Tome).

The plaintiff testified, that at different times before he purchased from A. B. Smith, he had had conversations with the defendant, who said he was agent of A. B. Smith, and had nothing

to do with the land except as such agent; said the purchase-
money, he supposed, belonged to A. B. Smith, as he was the only
man who could give a deed for it. He detailed many conversa-
tions with the defendant to the same effect.

W. F. Cole testified, that he purchased plaintiff's interest in the
land, and before purchasing, defendant told him he could get the
title from A. B. Smith, that by understanding with the defendant
the plaintiff was to have the "very logs" in suit.

In rebuttal the defendant offered to prove that the Joseph
Wilkins judgment, upon which the sheriff's sale was made of Israel
Smith's real estate, vesting the legal title in A. B. Smith, was
purchased from Wilkins by Israel Smith, and paid for with Israel
Smith's money, and that A. B. Smith held said judgment in trust
for Israel Smith, and for the use of said Israel Smith, who was to
have all the rights which A. B. Smith purchased under said judg-
ment to said land. To be followed with other evidence that A.
B. Smith, after purchasing in this title at sheriff's sale, claimed he
had done it for the benefit of Israel Smith; also, that after the
award of Elwell and others (referred to in the preceding case),
filed January 2d 1864, A. B. Smith claimed that he had got the
land awarded in said submission for his brother, Israel Smith, and
to help him out of his troubles, and to make a home for him.

The plaintiff objected to both offers, they were rejected, and bills
of exception sealed.

The court (Streeter, P. J.) charged:—

"By the award of the 6th of October 1862, made by Elwell,
Maynard & Baird, the title to the Sarah Morrison tract became
vested in Alanson B. Smith. It so remained till the 8th of May
1865, when Israel Smith acquired an equitable title to these lands.
On the 16th of September 1865, McNeal purchased by contract
with Alanson B. Smith, fifty acres of the Sarah Morrison tract,
from which the logs in controversy were taken. If McNeal pur-
chased without actual or constructive notice of Israel Smith's
interest, he took a good title.

"It is not claimed that he had actual notice. [If Israel Smith
was at the date of the purchase in the actual, visible and notorious
possession of the land, such possession would constitute construc-
tive notice of his title. Does the evidence show any such posses-
sion in Smith? If it does, Smith may now set up his title as a
defence in this action, going upon the land occasionally to cut wood
or timber, would not amount to constructive notice. I repeat his
possession must have been actual, visible and notorious.]

"But waiving this branch of the case, it is insisted that Smith ·
is now estopped from setting up his title, by his conduct and
declarations made to Cole.

"If you believe from the evidence that when Cole was about

[Smith *v.* McNeal.]

to purchase this land of McNeal, Israel Smith informed him that he had nothing to do with this land, and that if he, Cole, got Alanson B. Smith's title, and Cole purchased upon the strength of this assurance, Smith would now be estopped from asserting a title to this land in this action. The evidence upon this point is conflicting, and you must decide the question of fact for yourselves."

The verdict was for the plaintiff for $71.70.

The defendant took a writ of error and assigned for error the rejection of his offers of evidence and the portion of the charge in brackets.

*E. Smith* and *H. W. Patrick*, for plaintiff in error, cited Plumer *v.* Reed, 2 Wright 46; Sheriff *v.* Neal, 6 Watts 540; McCulloch *v.* Cowher, 5 W. & S. 427; Miller *v.* Pearce, 6 Id. 97; Morey *v.* Herrick, 6 Harris 123.

*U. Mercur*, for defendant in error.

The opinion of the court was delivered, May 8th 1871, by

THOMPSON, C. J.—This was an action on the case by McNeal *v.* Smith, for converting a number of saw-logs, brought by the former to the mill of the latter, and agreed to be sawed by him for the former, but converted by him to his own use, on the ground, as the testimony shows, that the logs were cut from land belonging to, and in his possession. The plea was "not guilty."

The plaintiff proved the delivery and number of logs sent to the mill; a contract to saw them; the value of the lumber when sawed; and that he informed defendant where they were cut, or rather perhaps, where they were to be cut, viz., from the land of Alanson B. Smith, being the same land claimed by the defendant; a tender of money for sawing, and a demand for the lumber, a refusal by the defendant, and rested.

The defendant then opened and proved possession of the land on which the logs were cut, and that it had been in his possession and occupancy since 1859; and other facts showing acts of ownership exercised by him over it for a number of years; with testimony in regard to the cutting of the timber and his forbidding McNeal cutting on the land. This possession under claim of ownership for many years ought to have raised a complete defence, unless it were shown in reply, that he had given authority to do the cutting himself, or by some one having power to authorize it, which was not done.

The answer to this testimony, was not an authority to cut the timber, from the defendant, but an estoppel, by declarations, such as that the defendant was only agent for the land on which the

[Smith v. McNeal.]

logs were cut; that it belonged to his brother, and that he had nothing to do with it, but as agent; that he supposed the purchase-money for the land belonged to his brother; that he did not care how much Cole bought from A. B. Smith; that he had a good title, &c.   These declarations were proved to have been often made by the defendant and to various people.

As I understand the facts, McNeal had bought the piece of land in controversy from A. B. Smith, and sold it to one Cole, who was in possession when the logs were delivered to defendant by McNeal to be sawed.   How the title stood between them is of no consequence; they both had title, directly or indirectly, under A. B. Smith.   It is enough here to say, that there was no dispute between them about the delivery of the logs by McNeal, from that piece of land.

After the plaintiff closed his rebutting testimony, the defendant offered to surrebut, by going into the relationship between him and A. B. Smith, and that the latter held the land in question in trust for him.   This the court rejected.   It was contained in two offers, both of which were disposed of in the same way.

It will be observed: first, this if admitted would have been no answer to the estoppel claimed, and of which there was abundant evidence to sustain it, if believed, to prevent the defendant holding the logs, if unquestionably cut from his land.   He could not claim them, if cut with the permission of A. B. Smith, holding title as his trustee, and from a party who was not notified of that fact, and who was put off his guard to make inquiries by defendant's declarations, and who had expended money and labor in reliance on these declarations.

To this answer to plaintiff's claim, defendant's offer presented no reply.   It was irrelevant as to that.   Nor did the plea raise any issue of title to the *locus in quo*.   Indeed the defendant's own testimony showed its utter irrelevancy, having showed the actual occupancy of the land, and he did not need title to raise a question of constructive possession.   We think, therefore, that the defendant was not injured by the rejection complained of, and we never reverse for immaterial errors.   Nor do we think there was error, taking this view of the case, in that part of the charge which related to possession, although under other circumstances there would be.   The case was put to the jury, I would say, exclusively, on the question of an estoppel, and as to which, and for which, no error is assigned.   This, if found by the jury, was a perfect answer to defendant's claim, without regard to title, and no doubt it was so found.   This species of defence arises, when one misrepresents the truth, or by wilful silence misleads another not having knowledge of a particular fact, into error or loss, or induces him to do what he would not have done if he had known the truth, and where injury would ensue from permitting the misleading party

[Smith *v.* McNeal.]

to allege the truth: Commonwealth *v.* Moltz, 10 Barr 527. There are many other and later cases to the same effect. Seeing no error in the record,

This judgment is affirmed.