## Plotts, Appellant, *v.* Warburton.

*Estoppel—Contract—Timber.*

Where an owner of timber enters into a written contract with another person by which the latter is to cut timber to a certain amount and deliver it to the owner, and in consideration of his services is to have the remaining timber, and the owner after a certain amount of the timber had been cut stated to persons who were doing the work for the contractor that he had received sufficient timber to protect his claim, and that they could cut the remaining timber and make their claim against the contractor out of that, the owner is estopped from setting up any claim to the remaining timber cut by the other parties in reliance upon his statement.

Argued Feb. 10, 1902. Appeal, No. 15, Feb. T., 1902, by

plaintiff, from judgment of C. P. Sullivan Co., May T., 1899, No. 36, on verdict for plaintiff in case of Wheeler H. Plotts v. George D. Warburton and Julius Durkes.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Replevin to recover timber.   Before DUNHAM, P. J.

At the trial it appeared that on April 18, 1896, the following agreement in writing was entered into between Isaac A. Brown and Wheeler H. Plotts, plaintiff:

"An agreement, made this 18th day of April, 1896, between Isaac K. Brown, of the first part, and Wheeler H. Plotts, of the second part, witnesseth: That for the consideration hereinafter mentioned, the party of the first part agrees to cut and deliver on the bank of the Loyalsock creek or some other locality mutually agreed upon by the parties, such an amount of timber from the Conrad Bates tract, in Hillsgrove township, Sullivan county, as shall, at the current market rate of such timber at the time of its delivery, be worth, clear of all incumbrance, the sum of $710, and such additional sum as shall be necessary to compensate the said party of the second part, at the rate of $1.50 and necessary expenses per diem, for the time necessarily spent by him in looking after the selling and collecting the pay for said timber, the delivery to be completed on or before the first day of January, 1899.

"In payment for such cutting and delivery, the party of the second part hereby sells to the said party of the first part all the hemlock bark on said tract not exceeding twenty-five cords, to be removed by said party of the first part at his convenience; and, furthermore, agrees to sell to the said party of the first part, in full payment for the delivery of the timber as above recited, all the residue of timber and bark upon said tract; but no part of said residue is to be cut, sold or removed from said tract until the full amount of timber required by this agreement to be delivered shall have been so delivered.

"The party of the first part hereby agrees to take said bark and residue of timber in full payment for cutting and delivering said amount of timber for the said party of the second part. And said party of the first part hereby specifically agrees not to cut, sell, remove or in any way dispose of said residue of timber

and bark (except the twenty-five cords above mentioned) until the complete fulfillment of his part of this agreement to the satisfaction of the said party of the second part. And the party of the second part guarantees to the party of the first part full ingress, egress and regress to the said man for the purpose of carrying out this agreement.

"It is also furthermore provided that, if, at the expiration of two years from this date, it shall appear probable that from disability or sickness, or any other cause, the party of the first part will not be able to complete the delivery or banking of said timber within the time hereinbefore specified, the party of the second part is hereby authorized to enter upon said premises and complete the banking and delivery of said timber, and the said party of the first part shall thereby forfeit all claim to said timber and residue and all claims against said party of the second part for work done under this agreement by party of the first part or anyone in his employ.

"Witness our hand and seal the day and year first above written.

"ISAAC K. BROWN.
"W. H. PLOTTS."

Brown did some of the work under the contract, employing to assist him the defendants Warburton and Durkes. When Brown ceased operations he owed Warburton and Durkes for labor. They recovered a judgment against Brown for their claim, and sold his interest in the timber at a constable's sale at which they became the purchasers. There was evidence that at and subsequent to the constable's sale, Plotts told defendants that the cut timber was sufficient to protect his claim, and that they should cut and take the standing timber, and make their claim against Brown out of that. The defendants acting on this representation proceeded to cut the standing timber. Subsequently plaintiff issued a writ of replevin and took what they had cut.

The court charged in part as follows:

[The agreement is in writing and is for the consideration of the court, if that is the agreement between them, if it has not been changed or altered by some parol agreement. . . .

But it appears by some agreement, which seems to have been entered into between these parties since then—the terms of which have not been clearly detailed to you so that we could tell what the agreement actually was—that instead of Mr. Brown actually banking these logs, that he put up a sawmill somewhere, and that these logs were delivered at that sawmill and manufactured into lumber, but when or where is not very clear . . . . the evidence in this case showing that the original contract must have been changed by a verbal agreement of the parties, we think it makes it of such a nature, such a verbal contract, as we shall have to leave to the jury for their consideration, instead of construing this written contract absolutely ourselves.] [3]

[Mr. Warburton has testified that at one time after Mr. Plotts had commenced taking away the timber—I think that was after Mr. Brown had stopped sawing, but whether or not it was is for you, and I desire to leave it to you—that he met Mr. Plotts there upon the mill yard, and he said to him, before you take away this timber I wish you would arrange to pay me. Mr. Brown owes me some, and I want you, before taking away this lumber to secure me. Mr. Plotts replied, according to Mr. Warburton's testimony, that he couldn't do that. He said, I don't owe you, it is not claim against me. I want to get my pay out of this lumber, and I believe I have enough lumber here to secure me if I can get it. I cannot pay you out of this, but why don't you get your pay out of the standing timber. Mr. Warbuton says he replied to Mr. Plotts by saying, I'm afraid if I do that you will come and take it the same as you are taking away this lumber; that Mr. Plotts replied, no, I will not disturb you if you go on and take it from that, and you can have it.

If Mr. Plotts did say this to Mr. Warburton, and after having said it Mr. Warburton went on and made costs for himself by getting a confession of judgment, bringing a suit against Mr. Brown, which he would not otherwise have done, and levied upon this timber and sold it at constable's sale, then Mr. Plotts would be estopped from setting up that that was his timber.] [4]

[If I say to one of you gentlemen, go to that neighbor of mine, he has a horse there and you can buy it, and you do go

and buy that horse and pay that neighbor for it, I can't afterwards turn around and say that was my horse, because I have induced you by my act to spend your money upon something which otherwise you would not have done. So that if Mr. Plotts said to Mr. Warburton and Mr. Durkes that they should go on and get their pay from Mr. Brown out of the standing timber, and that he would not set up a claim to it, he cannot turn around now and invoke the authority of the court to secure to him that timber which he induced the defendants to levy upon and sell.] [5]

[One party cannot induce another by his acts or words, either by lying idly by when it is his duty to speak, or by his information, which, perhaps, is wrong—to expend money, incur costs, or perform labor upon property upon the strength of its belonging to some one else, and then turn around and say that property was mine all the while, you have performed this labor, you have been to this expense, but I will take it now. Because the principle of law is that where one of two parties must suffer a loss, he by whom the loss was occasioned must suffer it. So that in this case, if Mr. Plotts did say these things and by reason of his assertions these defendants went on and incurred costs, and expended their money and labor upon this property, Mr. Plotts is estopped from now setting up that the property belonged to him.] [6]

[Now, gentlemen, if you find that this property at the time this writ of replevin was issued belonged to Mr. Plotts under his agreement with Mr. Brown, and find that it is not true that these representations were made as testified to, then you should find for the plaintiff; because under this written agreement Mr. Plotts had a right to all that timber until he had actually gotten his pay, and it was for him to say when he had received his pay, and until he had received it Mr. Brown had no right to take any of the lumber.

But if you find that he has made these declarations and these inducements to these defendants, although the timber at the time may have actually belonged to him, yet between him and these defendants he would not now have the right under such circumstances to set up a claim of ownership to it. He could be estopped from so doing if he made these allegations

that have been testified to by the defendants, and the defend-·
ants would be entitled to recover.] [7]

Verdict and judgment for defendant.    Plaintiff appealed.

*Errors assigned* among others were (3–7) portions of charge
as above, quoting them.

*E. J. Mullen*, with him  *A. Walsh*, for appellant.—A license
to cut timber can be terminated at the will of the party grant-
ing such license, but until so terminated, it would be a protec-
tion to the defendants against an action of replevin: Henrici
v. Davidson, 149 Pa. 323.

Acts or declarations to bind as an estoppel must have been
acted upon.   Something must have been done on the faith of
them before they can be invoked as an estoppel: Kline v. Mc-
Candless, 139 Pa. 223 ; McKnight v. Bell, 135 Pa. 359.

A declaration made by a party in ignorance of his rights will
not estop him from maintaining his title in an action of replevin :·
Harlan v. Harlan, 15 Pa. 507 ; Collins v. Houston, 138 Pa.
481; Sensinger v. Boyer, 153 Pa. 628.

*A. J. Bradley*, with him  *W. H. Hill*, for appellee.—Where a·
person encourages another to enter upon land and invest money
or expend labor, assuring him that he will thereby acquire title,
he cannot call in question such title, though he acted in igno-
rance of his own rights: Woodward v. Tudor, 81 ½ Pa. 382;
McKelvey v. Truby, 4 W. & S. 323; Miller v. Miller, 60 Pa.·
16 ; McCormick v. McMurtrie, 4 Watts, 192 ; Maple v. Kus-
sart et al., 53 Pa. 348 ; Workman v. Guthrie, 29 Pa. 495 ; Carr
v. Wallace, 7 Watts, 394.

OPINION BY ORLADY, J., July 10, 1902:
On the trial of this action of replevin the plaintiff claimed
title to a quantity of hemlock and hard wood lumber which the
defendants detained.   There is ample evidence in the record to
warrant the verdict in defendants' favor.   The plaintiff's own
evidence shows that he knew that it was necessary to expend
money and time in order to make a marketable product of the
logs and timber in the woods, and this the defendants de-

clined to do until they were assured by him that he had enough property in his possession to satisfy his claim against Brown. At the time of this conversation the plaintiff had it within his power to know definitely, after counting his part of the lumber and estimating the balance, whether his claim, which was at that time reduced to a precise sum, was covered, and he should not be permitted to visit the result of his reckless judgment on innocent parties who made due inquiry before expending their money and labor. He had the undoubted right to claim all the timber and logs in order to protect his own claim, he was not in duty bound at that time to withdraw any part of it; and, having spoken under such circumstances, he must be held to have told the truth: Smith v. McNeal, 68 Pa. 164; Huff v. McCauley, 53 Pa. 206; Kline v. McCandless, 139 Pa. 223; Sensinger v. Boyer, 153 Pa. 628.

The interest of Brown in the standing timber depended entirely on the extent of Plotts's claim against it; and if, as testified to by several witnesses and as found by the jury, he did withdraw his claim from the logs and timber in the woods and induced the defendants by his acts and words, at and subsequent to the constable's sale, to believe that his claim was satisfied in full, then the position of the parties and the circumstances surrounding the transaction at the time made it a case for the jury and not for the court.

The written contract between Brown and Plotts did not of itself determine the rights of the parties in this action. Even if the construction placed upon it be as contended for by the appellant, yet, if Plotts stated to the defendant, "I will not disturb you if you go in and take the standing timber and make your claim against Brown out of that," he is, under the testimony, estopped from setting up his claim to that property, and the judgment is affirmed.