# Miller *v.* Eichberg, Appellant.

*Master and servant—Salesman—Commission on sales—Profits—Case for jury.*

In an action by a salesman against his employer to recover compensation for services, it appeared that the plaintiff received a salary from the defendant, and had in addition a contract which provided as follows: "It is further agreed that should the total sales for the year exceed $50,000" the defendant should pay the plaintiff "a further remuneration of 5% on such excess, provided, however, that the total sales should show a profit of 20% average, or total profit of $10,000." Plaintiff testified that the defendant refused to furnish him the cost prices of goods, and from time to time told him to sell at the prices given him, and that if he did so sell he would be safe in having a sufficient margin of profit on such sales to earn his commission. Plaintiff sold goods to the amount of $63,000. The defendant claimed that the profits were to be ascertained by taking the difference between the cost of goods plus the total expense of conducting the business, and the gross receipts. Plaintiff claimed that profits meant the difference between the cost price of the goods and the selling price. There was evidence that the defendant had at times adopted this construction of the contract. *Held*, that the question as to the meaning of the contract was under all the circumstances a question for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 12, 1909. Appeal, No. 137, Oct. T., 1909, by defendants, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1908, No. 119, on verdict for plaintiff in case of Simon Miller v. Maurice H. Eichberg et al. trading as the Paper Mills Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover compensation as salesman. Before KINSEY, J.

The facts are stated in the opinion of the Superior Court.

At the trial Simon Miller was asked this question:

Mr. Miller: "Q. Did you ever have any conversation with the defendants in which they offered you stock in the company they were going to incorporate?"

Objected to by Mr. Levi as irrelevant.

"Q. When did you have any conversation with the defendants in regard to your becoming a stockholder in that company?"

Objected to by Mr. Levi as irrelevant.

"Q. Did you have any conversation with the defendants in which they asked you to become a stockholder of an intended corporation? A. They did. Q. When was that? A. That was in April, and it was in December. Q. What year? A. 1907."

Objected to by Mr. Levi.

The Court: As to April, that will be excluded; as to December, as bearing upon another branch of this case, I will admit it.

Exception for defendant. [6]

"Q. What was said by Mr. Eichberg or Mr. Hirsh? A. Mr. Hirsh said he had a man that had a lot of money, and he would want to get incorporated—the Paper Mills Company. He says, 'They will have plenty of money.' He said, 'Simon, you have been in our employ so long, you know the business from A to Z. We can't afford to leave you go out. Why not take stock with us?' I said, 'Mr. Hirsh, it is impossible for me to take stock, for I have not got any money. My weekly earnings—I have already obligated myself, I have a family at home depending upon me.' I said, 'I can't take any stock.' He said, "Never mind that, we will take so much money out of your monthly salary, and pay up on the stock.' He said, 'I know you will make anywheres from eight to ten per cent besides your salary, and then you are liable to put your feet on my desk and be in the same boat that I am.' "

The Court: "Q. That was the conversation with whom? A. Mr. Hirsh, a partner with Mr. Eichberg, one of the members of the Paper Mills Company."

Defendant presented these points:

1. It is incumbent upon the plaintiff to establish to the satisfaction of a jury that the defendants made an average profit of twenty per cent, or $10,000, upon sales aggregating $50,000, made by the plaintiff for the account of the defendant during the year 1907, before the plaintiff would be en-

titled to receive any commission upon any sales made by him in excess of the sum of $50,000. *Answer.* The first point of the defendants is refused. [1]

5. That under all the evidence, the jury should find a verdict in favor of the defendants. *Answer:* The fifth and last point is refused. [5]

Verdict and judgment for plaintiff for $569.10. Defendants appealed.

*Errors assigned* were (1, 5) above instructions, quoting them, and (6) rulings on evidence, quoting the bill of exceptions.

*Julius C. Levi,* for appellants.—The word "profit," as used in the contract sued upon, means net profit; in calculating profit, all expenses, including cost of selling as well as cost of manufacturing, must be deducted: Lepore v. Twin Cities Nat. B. & L. Assn., 5 Pa. Superior Ct. 276; Goodhart v. Penna. R. R. Co., 177 Pa. 1; Mackey v. Millar, 6 Phila. 527; Last v. London Assurance Corporation, L. R. 10 App. Cases, 438; Penn v. Whitehead, 17 Gratton (Va.), 503; Rubber Co. v. Goodyear, 9 Wallace, 788; Hersh v. Central Ry. Co., 74 Pa. 181; Welsh v. Dusar, 3 Binn. 328.

The employer's refusal to disclose to the salesman the cost prices does not entitle the latter to recover in this case.

*Harry M. Miller,* for appellee.—The defendants are estopped from setting up that plaintiff's sales have not shown twenty per cent profit by their repeated refusals to disclose to him the cost of the goods, coupled with assurances that if he sold at the prices given him, his sales would show a profit of twenty per cent: Hess v. Ins. Co., 38 Pa. Superior Ct. 158; Silliman v. Whitmer, 11 Pa. Superior Ct. 243; s. c., 196 Pa. 363; Paine v. Bank, 194 Pa. 403; Sprigg v. Trust Co., 10 Pa. Dist Rep. 267; Comes v. Beezer, 51 Pitts. L. J. 94; Plotts v. Warburton, 20 Pa. Superior Ct. 496.

The word "profits" used in the contract, is used in its commercial sense to indicate "the advance in the price of goods sold beyond the cost of purchase:" Rogers-Ruger Co. v. McCord, 115 Wis. 261 (91 N. W. Repr. 685); Mayer v. Nether-

sole, 71 App. Div. (N. Y.) 383; Morris v. Shepard, 53 Atl. Repr. (N. J.) 172; Manchester Paper Co. v. Moore, 104 N. Y. 680 (10 N. E. Repr. 861); Flagler v. Hearst, 62 App. Div. 18; Eyster v. Centennial Board of Finance, 94 U. S. 500.

OPINION BY MORRISON, J., December 13, 1909:

This is an action in assumpsit brought by the plaintiff against the defendants, based on two separate written contracts, between the parties, one for the year 1907, and the other for 1908. It is conceded by counsel for defendants that the jury found in their favor as to the contract for the year 1908, and as to all salary under both contracts. Therefore, this appeal only raises questions as to the right of the plaintiff to commission under the contract of 1907. This contract provided for a fixed compensation per month to the plaintiff and also his reasonable expenses, and then closed with the following paragraph, to wit:

"It is further agreed that should the total sales for the year exceed $50,000, party of the first part will pay party of the second part a further remuneration of 5% on such excess, provided, however, that the total sales should show a profit of 20% average or total profit of $10,000."

The whole controversy in this appeal hinges on the construction of this clause of the contract. The record contains numerous points and assignments of error, but, we think, the questions involved can be fairly considered under the three heads clearly stated by counsel for plaintiff, in his argument, as follows:

"First. The defendants, having made a contract with the plaintiff to pay him a commission on excess sales, if his total sales showed a profit of 20%, and having both at the making of the contract and during its life, ordered the plaintiff to sell at the prices given him, and stated that if he would so sell, he would be safe in having a sufficient margin of profit on such sales, to earn his commission, are the defendants now estopped to set up that although plaintiff did sell according to such instructions, his sales did not realize 20% profit, and they are, therefore, not bound to pay him a commission?

"Second. Does the word 'profits' as used in the contract mean 'net profits' such as are understood in a partnership accounting or the sale value of a business, viz: The difference between the cost of goods, plus the total expense of conducting the business and the gross receipts; or does it mean, under the circumstances of this case, and as construed by both the conduct and the words of the parties, the difference between prime cost (that is, the difference between the cost of the goods on their floor ready to sell) and the selling price to the customers?

"Third. Each party, placing a different interpretation on the word 'profits,' and there having been a course of dealing between the parties and conversations between them, which shed light upon their mutual interpretation of that word, was it not necessary for the court to leave it to the jury to say what the parties meant by using that word in the contract?"                .

Under the peculiar wording of the clause of the contract under consideration, and the evidence in the case, the learned court could not, in our opinion, as a matter of law, give a binding instruction as to the meaning of the language used in regard to the twenty per cent profits, the five per cent commission, etc. If, in fact, the defendants refused, on request by plaintiff, to furnish him the cost prices of the goods and from time to time told him to sell at the prices given him and that if he did so sell he would be safe in having a sufficient margin of profit on such sales to earn his commission, and the plaintiff actually sold $63,000 worth of goods during the year, then although the sales did not realize to the defendants twenty per cent profit, they ought to be estopped from refusing to pay the commission on the amount in excess of $50,000. If we are correct in this conclusion, then the court was right in refusing defendants' point (first assignment), because, if the defendants were estopped from setting up a defense of profit which prevented the plaintiff from recovering his five per cent commission, then the defendants were not entitled to an affirmance of said point.

There is sufficient evidence to warrant the jury in finding

that the plaintiff relied on the defendants' statements as to the profits he would make, and that he made extra efforts on that account to sell over $50,000 worth of goods. In this connection it should be noted that the contract did not require the plaintiff to sell over $50,000 worth of goods, but the inducement held out to him to increase his sales was the promise of the five per cent on the amount sold in excess of $50,000. We think the question of estoppel was in this case and that it was properly submitted to the jury under the conflicting evidence.

"Having induced action by another on a belief in a given state of facts, it is unjust to permit him who induced the action to deny the facts and strip the action of the protection which they would have afforded. But one who has not been misled cannot invoke this doctrine in his behalf:" Rice, P. J., in Silliman v. Whitmer & Sons, 11 Pa. Superior Ct. 243, 265; see also Plotts v. Warburton, 20 Pa. Superior Ct. 496, and cases therein cited.

We will next consider the meaning of the word "profits" as used in the contract. It must be conceded, as a general proposition, that the word "profits" has a fixed and definite meaning and imports the net amount made after deducting any proper expenses incident to the business. And again, it is said, the usual, ordinary and correct meaning of the word "profit" is the excess of receipts over expenditures: Lepore v. Twin Cities National Building & Loan Assn., 5 Pa. Superior Ct. 276.

In Goodhart v. Penna. R. R. Co., 177 Pa. 1, the Supreme Court (p. 15) said: "Profits represent the net gain made from an investment or from the prosecution of some business after the payment of all expenses incurred." There can be no doubt about the meaning of the word when applied to a partnership accounting or the sale value of a business. This would mean the difference between the cost of goods, plus the total expense of conducting the business, and the gross receipts. But in the present case, the language of the contract when viewed in the light of the testimony and the construction by the words and actions of the parties, it is not

clear that the contract did not mean the difference between the cost of the goods in the defendants' store ready to sell and the selling price to the customers. Each party to the contract, when the time for settlement arrived, placed a different interpretation on the word "profits," and there having been a course of dealing between the parties and conversations between them upon the subject of the plaintiff's profits, and the contention of the plaintiff not being clearly illegal or in contradiction of the contract, we think it was proper for the court to submit to the jury what the parties meant by profits as used in the contract.

The evidence shows that the plaintiff frequently requested from defendants the cost prices, evidently, so he could figure the profits on the sales he made and that repeatedly defendants told him he could go ahead and sell at the prices given him and he would be safe. If the plaintiff's version of his conversations with the defendants on the subject is correct, and the jury evidently so found, then it is unreasonable to suppose that at the time the defendants had in mind the numerous items of expense for freights, rebates, salary and other expenses now contended for by them. On the other hand, if the contract meant what plaintiff testified he thought it did, the difference between cost price and selling price, the defendants' statements to him were reasonable and in accordance with the meaning of the contract as it must have been found by the jury. In addition to this, the evidence shows that the defendants had a system whereby when an order was received from the plaintiff, it was pasted on a slip, and upon such slip there was immediately marked, by a member of the firm, the cost price of said order. This clearly seems to indicate a method of comparison between the cost price of the goods in the store and the selling price of the same by the plaintiff. To adopt the defendants' contention as to what deductions should be made from the profits on the plaintiff's sales required them to go to their books of account, at the end of the year, and this would seem to be a method which was not in contemplation at the time the contract was executed. We think the question of what the

442        MILLER *v.* EICHBERG, Appellant.

parties meant by the use of the word "profits" was not, alone, a legal one for the court, but that it had to be submitted to the jury under all of the evidence, and that it was properly so submitted.

In view of the narrow question involved in this controversy, we do not deem it necessary to discuss the several assignments of error seriatim. The learned counsel for appellant contends that the court below committed reversible error in admitting the evidence quoted in the sixth assignment. It must be conceded that so much of this evidence as related to the formation of a corporation and the taking of stock therein by the plaintiff might have been excluded, but we cannot see that this evidence did any harm to the defendants. The remainder of the evidence quoted, bearing on the compensation that the plaintiff might earn working for the defendants under the proposed contract, was relevant and competent, and therefore this assignment cannot be sustained as a whole, and it must be overruled. If the evidence first above referred to had been assigned for error standing alone, a different question might have been raised.

The assignments of error are all overruled, and the judgment is affirmed.